1          IN THE UNITED STATES DISTRICT COURT

2          FOR THE SOUTHERN DISTRICT OF TEXAS

3                  HOUSTON DIVISION

4   BROOKS et al.,              §   CASE NO. 4:22-cv-03322
                                §   HOUSTON, TX
5   VERSUS                      §   WEDNESDAY,
                                §   APRIL 19, 2023
6   HARRIS COUNTY SHERIFF'S     §   2:35 PM - 3:38 PM
    OFFICE et al.               §
7
                      CONFERENCE HEARING
8
          BEFORE THE HONORABLE CHARLES ESKRIDGE
9              UNITED STATES MAGISTRATE JUDGE

10                      APPEARANCES:

11

        FOR THE PARTIES:           SEE NEXT PAGE
12
        COURT REPORTER:            DISA MCKINNIE-RICHARDSON
13
        COURT CLERK:               JENNELLE GONZALEZ
14

15

16

17

18

19

20
                  TRANSCRIPTION SERVICE BY:
21
                  Veritext Legal Solutions
22              330 Old Country Road, Suite 300
                      Mineola, NY 11501
23            Tel: 800-727-6396 ▼ www.veritext.com

24   Proceedings recorded by electronic sound recording; transcript
                  produced by transcription service.
25

1                        APPEARANCES:

2

3    FOR THE PLAINTIFFS:          STAFFORD MOORE PLLC
                                  Justin A. Moore
4                                 325 N. St. Paul Street
                                  Suite 2210
5                                 Dallas, TX 75201
                                  214-764-1537
6
                                  Sadiyah Evangelista
7                                 P.O. Box 1092
                                  Houston, TX 77251
8
     FOR THE DEFENDANTS:          VIADA & STRAYER
9                                 Ramon G. Viada, III
                                  17 Swallow Tail Court
10                                The Woodlands, TX 77381
                                  281-419-6338
11
                                  HARRIS COUNTY ATTORNEY'S OFFICE
12                                James Carroll Butt
                                  1019 Congress
13                                Houston, TX 77002
                                  713-274-5133
14

15

16

17

18

19

20

21

22

23

24

25

HOUSTON, TEXAS; WEDNESDAY, APRIL 19, 2023; 2:35 PM

2          THE COURT:  I call case number 22-3322, Demetria

3    Brooks  and Sandra Brooks against Harris County Sheriff's

4    Office and others.

5          Can I get appearances of Counsel, please.

6          MR. MOORE:  Justin Moore for the plaintiffs.

7          THE COURT:  Thank you, Mr. Moore.

8          MS. EVANGELISTA:  Attorney Sadiyah Evangelista for

9    the plaintiffs.

10          THE COURT:  Hold on one second.  Thank you, Ms.

11    Evangelista.  Do I -- have you made a notice of appearance?  I

12    don't see you on the docket sheet.

13          MS. EVANGELISTA:  No, Your Honor.  I will after this

14    proceeding.

15          THE COURT:  You're welcome here.  Just get it on file

16    so that you get notice of things when they're on the docket.

17          MS. EVANGELISTA:  Thank you, Your Honor.

18          THE COURT:  Thank you.  For Defendants?

19          MR. VIADA:  Your Honor, I'm Ray Viada.  I'm here for

20    Sergeant Garrett Hardin.

21          THE COURT:  Okay.  Hold on one second.  You're here

22    for Mr. Hardin?  Okay, Mr. Viada.  Thank you very much.  And

23    for the municipal defendants?

24          MR. BUTT:  Your Honor, Good afternoon.  Jim Butt on

25    behalf of the Harris County Commissioners, Lina Hidalgo, and

1    Harris County Sheriff's Office, and Harris County.

2              THE COURT:  Okay.  Thank you.  All right.  A number

3    of motions up and pending.  Let's start with the motion to stay

4    that Mr. Hardin or Officer Hardin has pending.  And I start

5    with that mainly because I'd like an understanding of what is

6    going on in those -- there's, as I understand it, an

7    investigation, and I have no idea what the resolution of

8    anything at that -- at this point is.  And so what -- I guess

9    I'll start with the -- his counsel.  What's going on in any

10   other action concerning him about this event?

11             MR. VIADA:  Best intelligence I have based on what I

12   heard from his criminal defense lawyer this morning is that

13   this matter was scheduled to go to grand jury this week, but

14   prosecutor decided to push it off into the next term, so I

15   would assume by next month or the month after that it will go

16   to grand jury.

17             THE COURT:  Okay.

18             MR. VIADA:  From what I understand, again based on

19   what I heard, is that the -- that the investigation -- the

20   internal investigation by the county is awaiting the outcome of

21   the disposition of the criminal charge, so both those matters

22   are currently underway, but I have no control over when it

23   happens, and I can't be specific as to when it will happen.

24             THE COURT:  Okay.  And so -- and your client also has

25   pending a motion to dismiss.

1             MR. VIADA:  A motion for partial dismissal.

2             THE COURT:  Okay.  Right.  And as to that, I

3    understand the part of the concern about -- so if he's

4    indicted, then what you're asking for is a stay through all of

5    those further proceedings against him.  Is that correct?

6             MR. VIADA:  That's correct, Your Honor.

7             THE COURT:  And so I don't -- and I know that that's

8    in part related to potential need to assert fifth amendment on

9    any prosecution like that.  And so with the motion to dismiss

10   that he has pending, does it complicate things for you to argue

11   that motion to me, or should I be taking up the motion to stay

12   if I'm inclined to grant that, and just leave his motion to

13   dismiss out there?  I just want to make sure nothing's going on

14   the -- I don't want to -- I just want to -- sequentially want

15   to get this right so that nothing's happening that might

16   complicate rights that he might have in other proceedings.

17            MR. VIADA:  The motion to -- the motion to dismiss,

18   partial dismissal, only involves matters that no amount of

19   pleading or facts, you know, will affect, for example, the

20   standing of the sisters to bring wrongful death claims.

21            THE COURT:  No, I understand that.  I just want to

22   make sure that if I engage with you on the record about that,

23   which I'm otherwise inclined to do and take up the motion to

24   dismiss.  I just want to make sure -- I don't think it does

25   implicate anything for him in those other proceedings.  I just

1  want to make sure that that's how you want to proceed today.

2         MR. VIADA:  That's how I want to proceed.  It has no

3  --

4         THE COURT:  Okay.

5         MR. VIADA:  -- bearing on fifth amendment and his --

6         THE COURT:  Okay.

7         MR. VIADA:  -- that sort of thing.

8         THE COURT:  All right.  And so as to -- just we'll

9  take up the motions to dismiss later.  As to the motion to

10  stay, I understand that he is the officer involved in the

11  shooting, but there is at least an investigation at this point,

12  and there may be criminal proceedings against him, and that

13  makes it -- and I know that you might like to get his

14  deposition, at which point he would simply plead the fifth

15  amendment.  But there are concerns in that regard as to his

16  rights in that proceeding.  And so do you have thoughts about

17  the propriety of a stay or an abatement of action against him

18  at this point?

19         MR. MOORE:  Well, you know, I met with Counsel just

20  before you came out, Judge, and I think we have a general

21  understanding, and we agree generally about the stay and --

22         THE COURT:  Okay.

23         MR. MOORE:  -- what a, you know, I guess Officer

24  Hardin moving forward, how that could implicate him or expose

25  him to, you know.

1          THE COURT:  Yeah.  I mean, it's a concerning set of

2    facts.

3          MR. MOORE:  Right.

4          THE COURT:  It's why other governmental authorities

5    are looking into it.  I'm just looking at a civil action and

6    how that impacts a potential criminal proceeding.

7          MR. MOORE:  Well, you know, Judge, I don't know how

8    the Court's going to rule on this.

9          THE COURT:  Yeah.

10          MR. MOORE:  But you know, I guess the specter of a

11    criminal investigation and (indiscernible) investigation, I

12    mean, that's double hearsay at this point, but I think we've

13    all heard the same --

14          THE COURT:  Yeah.

15          MR. MOORE:  -- rumors tickling on the tea leaves, so

16    I live something is forthcoming regarding Sargant Hardin.  I

17    would just suggest if the Court does, you know, rule in favor

18    of the stay, could we have some sort of status update --

19          THE COURT:  Yeah.

20          MR. MOORE:  -- every 30, 60, 90 days, whatever the

21    Court feels is appropriate?

22          THE COURT:  Sure.

23          MR. MOORE:  Because we know these investigations --

24          THE COURT:  That's how I like to do --

25          MR. MOORE:  Right.

1          THE COURT:  I like to do my stays that way.

2          MR. MOORE:  Right.

3          THE COURT:  So things don't just languish.

4          MR. MOORE:  Right.  Because you know these

5    investigations --

6          THE COURT:  Yeah.

7          MR. MOORE:  -- can just trickle on forever, right?

8          THE COURT:  Yeah.  Okay.

9          MR. MOORE:  So that's the only concern that we have

10   from our end, but I think a stay could be appropriate.

11         THE COURT:  Okay.  As to what you've heard, when is

12   the next -- if it's being deferred to the next grand jury term,

13   when is that and when might there be something heard if it in

14   fact is going to that?  And I understand all of those are

15   probably under seal and you're trying to intuit what's going

16   on.

17         MR. VIADA:  Yeah.  My best intelligence as of this

18   moment is within 60 days.

19         THE COURT:  Okay.  All right.

20         MR. MOORE:  And Judge, we've heard something similar

21   as well.

22         THE COURT:  Okay.  Let's -- all right.  So I'm going

23   to -- I'm going to grant the motion to stay.  I would like a

24   status report in 60 days.  And as to what's known about any

25   pending criminal investigation and/or indictment, and with that

1    joint status report a -- you all confer -- a further request on

2    when the next status report would be provident if the stay

3    needs to continue.  Does that make sense?

4          MR. MOORE:  Yes, Your Honor.  And just for clarity, I

5    know you mentioned that you may rule on certain matters due to

6    the partial motion.  What would the stay incorporate?

7    Everything that --

8          THE COURT:  With the stay, I'll specify, and if

9    there's anything unclear about it by the time we're done, ask

10   me to clarify how that pertains to the stay.  The stay

11   certainly pertains to discovery.  I do think in terms of

12   getting your pleadings in shape on things that are purely legal

13   matters that that be able to proceed, even if it is as to --

14   there's a complicated array of defendants and claims, so

15   sitting here right now, I can't remember if I have in mind on

16   any claims that might be dismissed, whether it would be a

17   matter of repleading or not, but we can take that up if there's

18   any lack of clarity by the time we're done here.

19         MR. MOORE:  Yes, Your Honor.

20         THE COURT:  Okay.  I'm going to take a lot of notes

21   along the way.

22         Now, Mr. Moore, to let you know, I've had a number of

23   civil rights violation cases like this before me.  I frequently

24   grant the motions to dismiss that are brought at this initial

25   stage but, as always, with leave to replead as potential.

1    There may be -- there's a couple of purely jurisdictional

2    things that are raised the we'll take up.

3            And so I will say that overall, the complaint -- and

4    we're going to go through each of the different points.  Just

5    so you know where I am, overall, I think that the complaint

6    lacks some necessary specifics, which we're going to work

7    through and identify, but that is not a view by me that it will

8    always lack the necessary specifics, and so you will have a

9    chance to do a better/best pleading at which time I would

10   consider it.

11           And my practice is, you know, here we'll just be

12   doing this on the record.  And then if I'm ultimately ever at a

13   point where I would just be dismissing your claims, you'll have

14   a written opinion that you would have to test on appeal.

15   That's just sort of how I go about it.

16           MR. MOORE:  Understood, Judge.

17           THE COURT:  Okay.  So as we go through this, if you

18   have any questions about what my concerns were as to any

19   claims, ask me.  We'll talk it through further so that you know

20   what I have in mind on what you should be attempting to plead

21   on any claims that are being dismissed.  Okay.

22           MR. MOORE:  Understood.  And I do have a question.

23           THE COURT:  Yeah.

24           MR. MOORE:  This is more courtroom behavior.  We're

25   going to be combing through the complaint and the motions.

1          THE COURT:  Yeah.

2          MR. MOORE:  Do we need to stand to address you or --

3          THE COURT:  I think it's going to be -- there's going

4   to be so much up and down that -- I would say this.  I'm fine

5   if you would like to sit.  Some lawyers can't help but stand

6   whenever they're addressing the Court, so whatever you're more

7   comfortable with is fine.

8          MR. MOORE:  Okay.  Well, I just want to be respectful

9   to the Court, Your Honor.

10          THE COURT:  Yeah.  No, I appreciate that.  I

11   sometimes -- I often say, "Oh, everybody, you can just be

12   seated," and lawyers by habit just --

13          MR. MOORE:  Right.

14          THE COURT:  -- stand up.  All right.  So let's start

15   working our way through the claims that we have pending here.

16          So let's go to the wrongful death claims first.  So

17   for wrongful death, I see argument and law that such a claim is

18   limited to a surviving spouse, children, and parents of the

19   deceased, and citations from the Fifth Circuit that siblings

20   are not within the scope of that statute.

21          So my question is on the wrongful death, it looks to

22   me like under the statute, it's not able to be brought, but are

23   there others -- who is it that would be able to bring a

24   wrongful death claim on his behalf at this point?  Is it on

25   behalf of the estate?  Does he have a surviving spouse,

1  children, or parents that would have the ability to do so if

2  they were so inclined?

3        MR. MOORE:  In short, Your Honor, no.

4        THE COURT:  So he is --

5        MR. MOORE:  He died intestate, no children, no spouse

6  --

7        THE COURT:  And he -- and he happens to be someone --

8  that's very sad.  He happens to be someone that, at that point

9  in his life, had no so spouse, had not had children, and his

10  parents had predeceased him?

11        MR. MOORE:  Yes, Your Honor.  All he had was his

12  siblings that remained upon this death.

13        THE COURT:  And is there -- and so he's intestate,

14  but that would mean by any rules of succession without a will,

15  you know, there's somebody that could inherit whatever it is

16  that he had.

17        Does a wrongful death claim of that sort where

18  there's not a surviving spouse, child, or parents, does it

19  under the law move to siblings?  If he had $1,000, right, and

20  he died intestate, I would think that the rules of succession

21  would say the sisters get the $1,000.

22        MR. MOORE:  Right.

23        THE COURT:  If there's a wrongful death related to

24  his life, and without other family relatives, have you looked

25  to see whether that somehow survives in the person of someone

1    else?  I haven't seen authority that says that.

2          MR. MOORE:  We've looked for authority, but also as

3    we were investigating if authority did exist, Demetria Brooks -

4    - is one of his remaining sisters -- actually got a letter of

5    administration, so she's going through the probate process.

6          And if you don't mind, may I approach, Judge?

7          THE COURT:  Sure.

8          MR. MOORE:  We do have --

9          THE COURT:  Sure.

10         MR. MOORE:  A letter.

11         THE COURT:  Because that was in the -- as to the

12   survival claims.  I was definitely going to be having questions

13   about that.  Please.

14         MR. MOORE:  And (indiscernible) copies --

15         THE COURT:  Okay.

16         MR. MOORE:  -- to Counsel.  Does anyone from your

17   staff --

18         THE COURT:  You can hand it to my law clerk here.

19   Thank you.

20         MR. MOORE:  (Indiscernible).

21         THE COURT:  All right.  So letters of administration

22   appear to have been granted to Demetria Brooks Blaze who is,

23   just to confirm -- and that is the same -- there's a hyphenated

24   name.  That's the same plaintiff here, Demetria Brooks?

25         MR. MOORE:  Yes, Your Honor.  That's one of the

1    sisters, so it's Demetria Brooks and Sandra Brooks.

2              And just by point of clarification, we didn't seek

3    this letter of administration to waive our wrongful death

4    claim.  Obviously the Court will rule how you intend to rule,

5    but we did want to do our due diligence.

6              THE COURT:  To -- in what way would this letter like

7    waive your claim?

8              MR. MOORE:  Well, so --

9              THE COURT:  I think I'm misunderstanding.

10             MR. MOORE:  Well, so how I'm perceiving how we're

11   combing through each claim, the letter of administration would

12   speak specifically to the survival claim.

13             THE COURT:  Right.

14             MR. MOORE:  Right.  So we did --

15             THE COURT:  Okay.  All right.  I got you.

16             MR. MOORE:  Right.

17             THE COURT:  Okay.  So on the wrongful death claims,

18   who wants to argue as to the statutory issue that I've noted --

19   well, that was put before me.

20             MR. VIADA:  Yes, Your Honor.  Wrongful death by its

21   nature is a -- is a cause of action for injury to a relational

22   interest.  And the Texas statute which is, you know, drawn into

23   Section 1988, which provides the state law remedies under which

24   1983 is enforced takes cognizance of that same cause of action.

25             So as Your Honor correctly --

1           THE COURT:  Wait.  Say that again.  The what takes

2    cognizance of that?

3           MR. VIADA:  The state law remedies that are

4    incorporated under Section 42, Section -- USC Section 1988

5    brings in the state body of law that allows these -- allows

6    standing for the wrongful death beneficiaries under state law.

7    In the same way that it recognizes that the state statute of

8    limitations for general personal injury is also the statute of

9    limitations for 1983.  So there's no wrongful death

10   beneficiaries under the federal statute.  It --

11          THE COURT:  Oh, no.  I've got that.  Yeah.

12          MR. VIADA:  All right.  So the certain type --

13   certain relations are protected under Texas law, spouse,

14   parents, and children.

15          THE COURT:  Right.

16          MR. VIADA:  But not -- but not siblings.  And so

17   because there's no wrongful death cause of action to protect

18   the relational interest between brother, and sister or best

19   friends, or second cousins, or that sort of thing --

20          THE COURT:  Right.

21          MR. VIADA:  -- there is no cause of action for

22   wrongful death by those types of folks who were in that kind of

23   relationship to the person who was injured.  So that would be

24   the same here, that the -- that the sisters can't say that,

25   "I'm aggrieved because my brother was killed."  And so they're

1    --

2           THE COURT:  But a lot of times, I would read that

3    statute as saying Texas has a policy that says, "Look.  We

4    don't want other more attenuated relations to come in and

5    diffuse what would be this relationship injury, so we're going

6    to keep it as to spouse, children, and parents."

7           Is there a case that has looked at it and said if

8    there's not a pause, children, or parents as to whether it

9    otherwise exists and passes somehow to others who are blood

10   relations for purposes of intestate succession?

11          MR. VIADA:  Yes, and we've cited those cases in our -

12   - in our motion.  And the Court raised the question about heirs

13   recovering, and there is a -- there is -- there is a -- the

14   ability of the heirs to receiver as heirs of the estate still

15   exists.  But what they're recovering is not a recovery based on

16   their personal injury in terms of the relationship.  If the

17   estate recovers certain damages that it can under the survival

18   action and then all of that passes through the laws of

19   intestacy to their heirs, they don't get to come into court and

20   say --

21          THE COURT:  So whatever claims they have, they have.

22   But there's not an additional -- Texas has said there's not an

23   additional claim simply for their relationship with --

24          MR. VIADA:  For the wrongful death.  And the -- and

25   Texas Supreme Court has said --

1        THE COURT: Okay.

2        MR. VIADA: -- has said, and I've cited that case

3   too, and the Fifth Circuit has picked up on it, Brown versus

4   Edwards Transfer Company -- that the wrongful death benefits do

5   not belong to the estate.

6        THE COURT: Can you move the mic a little closer to

7   you?

8        MR. VIADA: Sorry. Wrongful death benefits do not

9   belong to the decedent's estate.

10       THE COURT: Okay.

11       MR. VIADA: So even the -- even the estate can't sue

12  for wrongful death.

13       THE COURT: Okay.

14       MR. VIADA: That the estate's suing for as a survival

15  action.

16       THE COURT: All right. Okay. Okay. Mr. Moore, do

17  you have any -- at this point, I think that the law is just

18  that in this unusual factual circumstance, there just simply

19  isn't this type of claim that can be brought related to this.

20  Do you have any legal authority? I mean, I've been

21  articulating some policy thoughts about it, but it seems like

22  the law is pretty clear.

23       MR. MOORE: Well, you know, I think we share the same

24  policy thoughts, Your Honor. And honestly, I think the law

25  lacks clarity in regards to what happens when a person doesn't

1    have a spouse, children, or parents that are surviving them

2    after their death.  I think it's open ended, to be quite

3    honest.  We haven't found any authority, but it doesn't mean

4    that authority can't be created or, you know, we can forge

5    forward to either close this window or to, you know, fully

6    define what exists for people who lose a loved one and --

7              THE COURT:  Right.

8              MR. MOORE:  -- that loved one, you know, basically

9    dies by themselves.

10             THE COURT:  The Texas Civil Practice and Remedies

11   Code like speaks, quoting, in terms of the surviving spouse,

12   children, and parents, usually the inclusion of a list excludes

13   others.

14             I'll do -- you're going to be repleading anyway, and

15   so -- you know, I was inclined on this to dismiss with

16   prejudice because I don't think that you can replead it under

17   the law, but what I'm going to say is this.  I will dismiss

18   this claim without prejudice, but if you replead it, replead it

19   pointing to legal authority that would itself tend to make it

20   viable.

21             If there are cases, or if there's any other aspect or

22   nuance of the statute, I think at this point, paired with the

23   facts that you have, you would need to include that to meet --

24   I'm not saying you'd do anything contrary to Rule 11.  I'm just

25   sort of saying under the facts that we have here, I think that

1    you would need to point to something under the law saying that

2    your clients have the potential to plead this claim, and I'd be

3    happy to consider that again if you can find that authority.

4              MR. MOORE:  Yes, Your Honor.

5              THE COURT:  Okay.  The other aspect of this claim,

6    Harris County simply asserts that sovereign immunity has not

7    been waived because it would've been an intentional tort.  Am I

8    understanding that argument correctly on behalf of Harris

9    County?

10             MR. BUTT:  Yes, Your Honor.  Wrongful death in the

11   form of an intentional act, assault and battery, these are

12   torts that are not waived under the Texas Civil Practice and

13   Remedies Code 101.106.

14             THE COURT:  Okay.  And Mr. Moore, similar thoughts on

15   that.  I haven't seen -- you know, it's a very specific -- it

16   is sovereign immunity, and it is something where -- it's a

17   complicated statute though, but there needs to be an indication

18   of a waiver as to a particular type of claim.  Do you have

19   anything indicating that this type of claim, as against the

20   municipal defendants, could go forward?

21             MR. MOORE:  In regards to sovereign immunity, you

22   know, there are some exceptions, and they're not limited to

23   waiver.  They're limit -- I mean, the exceptions expand into

24   violations of federal law and civil rights violations as well.

25   In regards to the assault and battery, you know, the assault

1   and battery occurred in the transaction of a civil rights

2   violation. So I do believe that with that being the case --

3           THE COURT: Okay.

4           MR. MOORE: -- that serves as a federal -- a

5   violation of federal law, which based on my reading of the

6   statute is one of the exceptions that would not afford these

7   particular defendants the ability to use sovereign immunity.

8           THE COURT: All right. Okay. Under the law of

9   sovereign immunity in relation to the Texas Tort Claims Act, I

10  don't see that it is waived here. But on the basis of what

11  I've said previously, that if I am going to be ultimately

12  dismissing a claim, I will have given you a chance to replead

13  it.

14          You can attempt to replead this, but again pointing

15  in your pleading to what it is -- sovereign immunity exists,

16  and so you would need to be showing something that it is a

17  waiver to allow a particular -- this particular type of cause

18  of action to proceed. And so if you plead that with what

19  you've got, we'll take a look at it next time, and I'll write

20  it up that way.

21          MR. MOORE: Understood, Judge.

22          THE COURT: Okay. All right.

23          On the survival claims, now that we have -- we'll

24  leave Harris County to one side, and it's -- it has another

25  sovereign immunity argument. But on the survival claims, now

1    that we have the letters of administration issued, what -- I'll

2    start with Defendants.  What clarity if any does that give as

3    to the survival claims to go forward here?

4              MR. VIADA:  Your Honor, the only issue I think left

5    for the survival claim is that one of the sisters is not the

6    administrator of the estate, and so I would assume that she

7    falls out as the -- as the plaintiff to bring the claim on

8    behalf of the estate.  But --

9              THE COURT:  But as to the one who --

10             MR. VIADA:  Looking at the order that was provided

11   today that the -- that the -- that the estate now has an

12   administrator, then I have no objection to the estate moving

13   forward with a  --

14             THE COURT:  Okay.

15             MR. VIADA:  -- with Demetria Brooks as the plaintiff.

16             THE COURT:  All right.  Mr. Moore, does that make

17   sense to you that the claim can go forward on -- with Demetria

18   Brooks as the putative plaintiff there on behalf of the estate

19   but not as to Sandra Brooks?

20             MR. MOORE:  Yes, Your Honor, and I spoke with Counsel

21   about that specifically.

22             THE COURT:  Okay.

23             MR. MOORE:  We are prepared to move forward with Ms.

24   Brooks or one of the Brookses, Demetria Brooks, as the sole

25   remaining plaintiff, the administrator of the estate.

1       THE COURT:  Okay.  And so that claim goes forward,

2   but it will be dismissed as -- goes forward as to Demetria

3   Brooks but will be dismissed as to Sandra Brooks.  And I will -

4   - the dismissal as to Sandra Brooks would be with prejudice,

5   but if something happens in the administration of the estate

6   and for some reason it shifted over to her, I would allow you

7   to replead it at that time to include her.  But there's nothing

8   you can do to replead that right now.

9       MR. MOORE:  Okay.  And --

10      THE COURT:  I don't expect anything would happen, but

11  you never know.

12      MR. MOORE:  Right.  In the case that the worst thing

13  happens --

14      THE COURT:  Right.

15      MR. MOORE:  -- procedurally, if you dismiss it with

16  prejudice, how would we --

17      THE COURT:  Motion to reconsider.

18      MR. MOORE:  Motion to reconsider.  All right.

19      THE COURT:  Yeah.  It's always one of those things.

20  It's like --

21      MR. MOORE:  Would it be a 60(b) motion or --

22      THE COURT:  I'll enter it that it's dismissed without

23  prejudice, but leave to replead will only be granted upon a

24  showing of a sufficient change of facts.  Okay.  So that's how

25  the order will read.  Okay.

1       MR. MOORE:  Sorry for being --

2       THE COURT:  No.  That's --

3       MR. MOORE:  -- painstakingly anal, Judge.

4       THE COURT:  No, that's what a good lawyer does.  So

5   hold on.  All right.  All right.  And then Harris County has a

6   similar sovereign immunity argument.  Can I get you to

7   articulate that, please?

8       MR. BUTT:  Sure, Your Honor.  We'll we're talking

9   about intentional act, so that would be subsumed within the

10  Texas Civil Practice and Remedies Code 101.106, so I would have

11  the similar argument that I would have for assault, battery,

12  wrongful death.

13      THE COURT:  So it's a survival claim, but it's

14  relating to an underlying intentional act.

15      MR. BUTT:  Intentional act.

16      THE COURT:  That's the argument?

17      MR. BUTT:  That's the argument.

18      THE COURT:  All right.  And did you -- did you have a

19  case cited to construe it all that way?  I'm just not -- I hear

20  the argument.  I'm just -- again, on unique facts, I'm not sure

21  that I saw a case that was particularly disposing of a

22  sovereign immunity question under a survival claim like that.

23      MR. BUTT:  I don't see it in my brief or in the memo.

24      THE COURT:  Okay.  All right.  I'll do this.  Mr.

25  Moore, I'm going to dismiss without prejudice so that you can

1    replead it.  And I would again say plead it with the law that
2    you think is available there.  I don't know that I've seen a
3    case from Harris County -- I see that this -- in an underlying
4    way, it goes towards an intentional act so that sovereign
5    immunity might not be waived, but for purposes of a later
6    motion to dismiss, Mr. Butt, see if you can find a case that's
7    on that point.

8            MR. BUTT:  Sure.

9            THE COURT:  Because that's a tricky point.  So it may
10   go forward, but we'll see.

11           MR. MOORE:  Yeah.  I just wanted to interject.  So
12   when Counsel's talking about intentional acts, he's talking
13   about a respondeat superior theory in which it doesn't apply to
14   an agency that had sovereign immunity.  Is that -- I just want
15   to make sure I'm following what we're discussing currently.

16           THE COURT:  I'm not quite sure that gets at it.  Go
17   ahead, Mr. Butt.

18           MR. BUTT:  Well, actually, it applies to the --

19           THE COURT:  I mean, articulate your own position as
20   to that.  Yeah.

21           MR. BUTT:  It applies to individuals, the employees,
22   as well as the employer, and it doesn't work for either one, so
23   it's not respondeat superior.

24           THE COURT:  Yeah.  It's as to -- I mean, it's -- to
25   me, it's always an interesting thing under the law that

1  intentional acts are something that are not waived.  And
2  sometimes the intentional acts are -- can be argued and alleged
3  as extreme.  I understand that.  But sovereign immunity and
4  waiver is what it is, and that's what the statute says.
5          MR. MOORE:  Correct.  I just wanted clarification
6  because I would say that the agencies did conduct some
7  intentionality with their actions in regards to Sergeant
8  Hardin, but the failure to discipline, which, you know, will be
9  listed in our complaint, in our response -- responses to each
10 of the motions to dismiss.
11         THE COURT:  Well, we'll take that up, and -- but it's
12 one thing as to whether -- I hear what you're saying and
13 whether you can plead a Monell claim of some sort against
14 (indiscernible).  That's a different claim.
15         MR. MOORE:  Right.
16         THE COURT:  And it gets toward, ultimately, I do
17 think the same damages.  But under this particular claim under
18 Texas state law, the question is whether that's been waived.
19         MR. MOORE:  Right.
20         THE COURT:  Okay.
21         MR. MOORE:  All right.  Understood.
22         THE COURT:  All right.  And so on both of those, the
23 claims that we've been talking about, Harris County, as we've
24 gone through it -- you know, at the end of the day when it's
25 all going towards ultimately the same underlying facts -- it's

1  different theories of liability but ultimately towards what

2  would likely be the same quantification of damages where some

3  theories are stronger than others, it's up to you whether you

4  want to replead it certain ways as to others. I leave that to

5  you, but some of your angles under the law are stronger than

6  others.

7  MR. MOORE: Understood.

8  THE COURT: Yeah. Okay. All right. Assault and

9  battery. And is -- the assault and battery is directed just

10  towards Officer Hardin, correct?

11  MR. VIADA: I believe that's correct. I know that it

12  has been directed towards Officer Hardin, and I've addressed

13  that in the motion for partial dismissal as well.

14  THE COURT: I mean, there's theories that like what

15  he did constituted an assault and battery, and so there are

16  theories against the municipal defendants for that conduct, but

17  it's not any type of putative assault and battery claim against

18  them.

19  Mr. Butt, let me know if I'm misunderstanding. I

20  just don't think --

21  MR. BUTT: Yes, Your Honor. When I --

22  THE COURT: -- that that claim is --

23  MR. BUTT: -- look at the index of counts, Count 2 is

24  assault and battery, parentheses Garrett W. Hardin.

25  THE COURT: Okay.

1    MR. BUTT:  And there are no other assault and battery

2    counts.

3    THE COURT:  Okay.  Just wanted to be clear.  So this

4    is -- all right.  So just as to Officer Hardin.  Okay.  So go

5    ahead.

6    MR. BUTT:  Yes, Your Honor.  And there are -- there

7    are a couple of points on that.  The Texas legislature in 2003

8    enacted a statute that effectively bars, you know, common law

9    tort claims against governmental officials in their individual

10   capacity.  And I have cited Fifth Circuit of authority that has

11   picked off of Texas Supreme Court authority for that

12   proposition, and it's -- the statute is Section 101.106(f).

13   And there are Texas cases as well that have addressed

14   whether bringing a tort claim under the rubric of a penal code

15   violation is appropriate, and the courts have said that no,

16   that statute also operates a bar that way too.

17   So in a nutshell, and putting aside whether the

18   federal civil rights claims are valid -- and I'm not addressing

19   that -- state law claims against --

20   THE COURT:  Right.

21   MR. BUTT:  -- Officer Hardin are barred by immunity.

22   THE COURT:  Okay.

23   MR. BUTT:  Under this statute.

24   THE COURT:  So Mr. Moore, as I understand it, your

25   theory against Officer Hardin is that he was acting within the

1    scope of his employment.

2            MR. MOORE:  Correct, Your Honor.

3            THE COURT:  You're not seeking to plead that he was

4    doing something on his own time or of his own volition that

5    like is not chargeable potentially to the county.  Is that

6    right?  I don't want to put words in your mouth.

7            MR. MOORE:  Yeah.

8            THE COURT:  Are you trying to pursue them in the

9    alternative?  Are you trying to pursue --

10           MR. MOORE:  Right.

11           THE COURT:  It just seems to me that you're saying he

12   was on duty, and this is what he did, and so I have certain

13   claims against him but also certain claims against --

14           MR. MOORE:  Right.

15           THE COURT:  -- his employer.  Go ahead.

16           MR. MOORE:  Not -- I don't want this to appear to the

17   Court as a have-your-cake-and-eat-it-too moment.

18           THE COURT:  Right.

19           MR. MOORE:  But you know, we know that sometimes or

20   most times or more often than not, you know, municipal agencies

21   are dismissed from these lawsuits.  So we wanted to maintain

22   all of our causes of action against the primary actor.

23           Now, we do believe that Sergeant Hardin was in a

24   sense able to commit these civil rights violations and also

25   these torts due to the actions or inactions of these agencies,

1    but, you know, when filing the complaint, we wanted to ensure

2    that the person who actually is responsible for the decedent's

3    loss of life, we made sure we carried every potential claim

4    against him as well.

5            So I don't know if that's a --

6            THE COURT:  No, it doesn't -- and it's not me.  It's

7    just the Texas Tort Claims Act.  If a suit is filed against an

8    employee of a governmental unit based on conduct within the

9    general scope of that employee's employment, et cetera.

10           MR. MOORE:  Mh hmm.

11           THE COURT:  And then there are rules about what that

12   means as to the viability of the claim.  And so it's a hard one

13   to read as -- I hear what you're saying.  It's like, well, I

14   would like to kind of plead it in the alternative.

15           MR. MOORE:  Right.

16           THE COURT:  That it was within the scope of his

17   employment so that you have theories against the municipality,

18   but --

19           MR. MOORE:  Yeah.

20           THE COURT:  -- try to plead the other way and say,

21   well, he wasn't within the scope of his employment.  And I'm

22   just -- I'm not sure that statute comprehends that.

23           MR. MOORE:  Right.  And I think I share the Court's

24   viewpoint on this.  It's -- you can't have it --

25           THE COURT:  Because usually, sometimes state statute

1  is perfectly content to let things be pleaded in the

2  alternative.  In fact, I think I have one claim coming up

3  where, as I was reading it, I was thinking about, well, that's

4  one that might be able to go forward in the alternative.  I'll

5  --

6         MR. MOORE:  Right.

7         THE COURT:  -- raise that again when I get forward.

8  I just don't know that the statute allows that here.  Do you

9  read it any other way?

10         MR. MOORE:  I don't believe the statute contemplates

11  alternative pleadings.  If it's a question of if it should, I

12  mean, we're not here today to argue that.  But to your

13  question, Your Honor, I think the alternative pleading in this

14  particular scenario probably does not grant us the ability to

15  have it --

16         THE COURT:  Okay.

17         MR. MOORE:  -- on both sides of the coin.  So if the

18  Court is asking which claim we want to pursue --

19         THE COURT:  I kind of am.

20         MR. MOORE:  Yeah.  You know, we're --

21         THE COURT:  And not without preserving your

22  objections to what my ruling might be.  Like if you're -- if

23  you want to argue I should be able to plead in the alternative,

24  I'm of the view the statute doesn't allow you to do that.

25  That's fine.  But me being of that view, I'm not telling you

1  which of those theories you have to plead.

2          MR. MOORE:  Right.

3          THE COURT:  I would let you choose which one you want

4  to plead going forward.  And I take it, it would be within the

5  course of his employment.

6          MR. MOORE:  Exactly.

7          THE COURT:  Is that correct?  All right.  So I'm

8  going to dismiss the assault and battery claim on that basis.

9  This is one that I think the statute is clear, and the case is

10  cited.  Make it clear that it's not one that can be pleaded

11  around this way.  So I'm thinking dismissal with prejudice on

12  this one.  Is there anything that you can think of that you

13  could do to replead it that might make it viable because I

14  would give you that chance if there's some way to do that.

15          MR. MOORE:  Well --

16          THE COURT:  But you otherwise having my ruling that -

17  -

18          MR. MOORE:  Yeah.

19          THE COURT:  -- you can only plead it as course of

20  employment or not, and you're electing to go forward as course

21  of employment.

22          MR. MOORE:  We would like to continue to mine through

23  research if I can authority that allows us to, you know,

24  maintain our claim there.  And just for the record's sake,

25  we're not waiving our claim that he's liable under that theory.

1           THE COURT:  I will -- okay.  So I'll dismiss the

2    claim with prejudice, and on this one -- because I think if --

3    on this one, I think it's hard to find any authority that might

4    help you, but if you do, you can bring that to my attention

5    with a motion to reconsider.

6           MR. MOORE:  Thank you, Your Honor.

7           THE COURT:  Okay.  All right.  All right.  Now the

8    Section 1983 claims.  I'll start with the various defendants

9    that are -- before we get to the Monell claims, there's the

10   Harris County Sheriff's Office and the Harris County

11   Commissioner's Court as Defendants.

12           As I understand it, they are not separate entities

13   which are proper pursuits in the sense of if you got a judgment

14   against them, you'd have some entity against which you can

15   enforce judgment and collect money.  It's -- as I understand it

16   -- and you are suing the county that -- that's who you need to

17   be suing, and it brings in the persons associated with those

18   offices.  Do you see it -- do you see them as necessary parties

19   in some way that you want to try to preserve?

20           MR. MOORE:  We do seem them as necessary parties.

21           THE COURT:  They will be witnesses to the extent that

22   testimony from anybody associated with those is relevant.

23   You'd have access to that.

24           MR. MOORE:  Right.

25           THE COURT:  But in terms of a defendant, is it one

1   that has a meaning?

2           MR. MOORE:  Well, Your Honor, based on my

3   understanding of the law, based on the research that we

4   conducted in construing the complaint, you know, the safeguards

5   that the defendants raised, those apply to non-jural entities

6   that don't have autonomous control of their own actions.

7           And we would submit to the Court that the sheriff's

8   office and the County Commissioner's court all have their own

9   autonomous day-to-day activities in regards to policymaking but

10  also budgetary restraints involving the activities of policing

11  in the county.

12          We would submit that we also need discovery to figure

13  out which agency is in complete control of the purse strings,

14  so to speak, or the policymaking.  At this juncture, we just

15  don't know.

16          THE COURT:  Let me -- let me ask of your adversary,

17  Mr. Butt.

18          So for purposes here, if there is a theory of

19  liability that was viable here against HCCC and HCSO, it would

20  be viable in Harris County as Harris County.  Is that right?

21          MR. BUTT:  Yes, Your Honor.  That's correct.  And we

22  submit that they are non-jural entities.  I have pulled a

23  couple of cases from various counties within Texas, Ellis

24  County, Tarrant County where county commissioners were sued in

25  1983 actions and dismissed as non-jural entities.  We submit

1   that the sheriff's office is also a non-jural entity in order

2   to impose Monell liability, a final policymaker must be --

3           THE COURT:  Okay.

4           MR. BUTT:  -- involved in making policy and so forth.

5   And the county commissioners are not the final policymakers.

6           THE COURT:  But even as to -- okay.  I hear what

7   you're saying there.

8           Mr. Moore, so you have -- I'll hear what you have to

9   say in a second.  In answer to my question, the answer was yes,

10  any theory that you're trying to assert against these two

11  entities is valid against Harris County, and so you have a

12  defendant for any of these factual allegations that you want to

13  make against those two offices.  You can point at Harris

14  County, and if you prove them, then you have an entity against

15  whom you can enforce a judgment.  So that -- there's that.

16  What else do you want to say?

17          MR. MOORE:  Understood on that point, Judge.  I say

18  that with caution as to not waive --

19          THE COURT:  Mh hmm.

20          MR. MOORE:  -- any rights or claims that we have

21  against HCC -- HCSO, the sheriff's office, and HCCC.

22          THE COURT:  When I'm dismissing parties or claims,

23  I'm not asking you to say, "Yes, you're right.  I totally agree

24  with you doing that."  No, you still have your objects to it

25  preserved.

1          MR. MOORE:  Mh hmm.

2          THE COURT:  But that's my -- that's my articulated

3   reason, but that -- I don't see it compromising your case in

4   any way.

5          THE COURT:  Right.  Well, I would just rebut that.

6   There is caselaw for police agencies to be treated as entities

7   that can be -- that can have liability in these types of cases.

8   Piotrowski versus the City of Houston dealing with the police

9   department.  You've got Miller versus Stanmore.  That's another

10  police department that was sued under 1983, and also Hernandez

11  versus Texas, so we have caselaw to support us naming these

12  entities in our own complaint as agencies that are liable for

13  the actions of this particular employee, Mr. Hardin.

14         THE COURT:  All right.  All right.  I see the law on

15  these -- and I've dealt with I think it's HCCC previously, that

16  it's not a jural entity that it can be sued this way.  I'm

17  going to dismiss them from this action.  If in discovery, if in

18  anything that's going on in your proceeding against Harris

19  County there's something that indicates Harris County is trying

20  to shunt off responsibility or decision making to one of these

21  entities, that would then be meaningful and important.  You can

22  ask me to reconsider the ruling.

23         But I think from what I've established with Harris

24  County that anything that you want to be arguing that the

25  persons in these office did is the same facts that you would be

1    mounting to bring your claim against Harris County itself.  And

2    so we'll go froward that way.

3              MR. MOORE:  Okay, Judge.

4              THE COURT:  Okay.  All right.  For Judge Hidalgo, it

5    is -- she did not personally participate in the fatality that

6    occurred here, and so the claim against her is in her official

7    capacity, correct?

8              MR. MOORE:  Correct.

9              THE COURT:  Okay.  And so again, Mr. Butt, articulate

10   for me.  That again is that it just means that the claim is

11   against Harris County, and so anything that when Mr. Moore

12   would later be pointing and saying decisionmakers,

13   policymakers, whatever it is as to Ms. Hidalgo, that's pointing

14   at Harris County as someone in authority there, correct?

15             MR. BUTT:  That's correct.  She is the authorized

16   agent to receive service, but that's the extent of it is as far

17   as these --

18             THE COURT:  Okay.

19             MR. BUTT:  -- kinds of cases go.

20             THE COURT:  Okay.  Mr. Moore, I'm going to dismiss

21   her on the same basis of what I just said.  And you know, I've

22   dealt with other of these cases, and that's the way Harris

23   County proceeds, and they don't try to -- well, Judge Hidalgo

24   was off doing her own thing, and that wasn't authorized  by the

25   county.  That's not the way they proceed in this litigation.

1    If that happens, you know, for some reason, you can bring that

2    to my attention.  All right.  And your objections are

3    preserved.

4           MR. MOORE:  Yes, Your Honor.

5           THE COURT:  As to that ruling.  Okay.

6           All right.  So now the excessive use of force claim,

7    as I understand it -- am I understanding it right?  Everybody

8    agrees that the claim goes forward under the fourth amendment.

9    The question is just whether it also proceeds under the 14th

10   amendment.  Is that right, or am I misreading something?

11          MR. VIADA:  As far as Officer Hardin is concerned,

12   that is right.

13          THE COURT:  Okay.

14          MR. BUTT:  Yes, Your Honor.  Not the 14th.  Not

15   Kingsley versus Hendrickson because this is in the process of

16   an arrest, so it's not post-arrest or post-detention, so it's

17   (indiscernible) from 1989.

18          THE COURT:  Mh hmm.  Mr. Moore?

19          MR. MOORE:  Well --

20          THE COURT:  The claim goes forward.

21          MR. MOORE:  Right.

22          THE COURT:  It's just kind of the theory on which it

23   goes forward.

24          MR. MOORE:  Understood.  We would submit that it

25   falls under both the fourth and 14th amendment.  I think under

1    any piece of caselaw or how you want to read those amendments,

2    I think it's quite clear that if, you know -- if there is

3    excessive force and it shocks the consciousness, it could be a

4    violation of the due process cause under the 14th amendment

5    along with anything that falls under the fourth amendment as

6    well.

7            And I would submit to the Court -- obviously we

8    haven't gotten into discovery, but we do believe that this is

9    an offense that does shock the consciousness, which would

10   trigger the due process protections under the 14th amendment.

11           THE COURT:  All right.  My ruling on this is informed

12   by the fact that I don't see that the discovery would be

13   meaningfully different under the fourth amendment or the 14th

14   amendment.  It's going to be the same, and so I'm not

15   dismissing the claim as pleaded under the 14th amendment.  That

16   can be raised again on summary judgment as a matter of law, but

17   again, I think -- I think the 14th amendment really is just

18   mostly incorporating fourth amendment standards for purposes if

19   you were having a standalone 14th amendment claim based on what

20   comes up in discovery.

21           If there's a theory that can plausibly go forward

22   under the 14th amendment that doesn't go forward under the

23   fourth amendment, I guess I would let you try to show that on

24   summary judgment, if -- assuming they move.

25           MR. MOORE:  Noted, Judged.

1        THE COURT:  All right.  All right.  So the 14th
2   amendment -- the motion against the 14th amendment claim will
3   be denied.
4        All right.  Now we have the Monell claims.  All
5   right.  So we have policy and custom, failure to train, failure
6   to supervise, and failure to discipline.  So let's start on --
7   on all of these aspects, the complaint is thin at this point,
8   but I think on all of these aspects, it is certainly things
9   that can be repleaded.
10       A lot of times what -- and I know some of the other
11  judges go at it in terms of what are the policy and customs,
12  you know, what's been disclosed as part of initial disclosures
13  that would help you plead these claims better.  Has there been
14  any initial disclosures in this case?  What has been turned
15  over to you, Mr. Moore, at this point?
16       MR. MOORE:  I believe we've only received certain
17  names in regards to, you know, potential witnesses moving
18  forward, but nothing substantive that would help us get a
19  clearer view as to what happened that day or what happened
20  prior.
21       THE COURT:  Mh hmm.  Are there -- from Harris
22  County's perspective, are there written policies as to all of
23  these aspects?  Were there written policies -- what -- I guess
24  you don't need to specify them.  I'll just ask my question.
25       Are there written policies, and, for whatever they

1    are, why wouldn't I have you turn them over for consideration

2    towards repleading?

3         MR. BUTT:  That recent case from 2022, Carswell

4    versus Camp says all discovery is stayed pending the resolution

5    of an invocation of qualified immunity, so we would submit that

6    it applies to Harris County as well as the individual.  There

7    exists policies on applications of force, uses of force that

8    would apply.

9         THE COURT:  Familiarize me with your argument on

10   qualified immunity.  Is that something that Harris County --

11   itself is --

12        MR. BUTT:  No.

13        THE COURT:  It's not.

14        MR. BUTT:  Not.

15        THE COURT:  It would be what --

16        MR. BUTT:  The -- Hardin.

17        THE COURT:  -- the Officer Hardin --

18        MR. BUTT:  Yes.

19        THE COURT:  -- can assert.  I understand that.

20        MR. BUTT:  But it stays all discovery not only from

21   the individual but from the entity as well.

22        THE COURT:  Hm.  I didn't write up anything in

23   advance.  Do I have something pending on qualified immunity

24   from Officer Hardin?

25        MR. VIADA:  Not at this time, Your Honor, other than

1    just the motion to dismiss.

2         THE COURT:  That's -- well, but is that based on

3    qualified immunity?

4         MR. VIADA:  It's not.

5         THE COURT:  That's what I thought because as pleaded,

6    at least as to those facts, it would be hard to assert

7    qualified immunity as pleaded.  I'm not saying that that is an

8    accurate statement of what happened but it's -- you know, the

9    facts of what happened are well pleaded by Plaintiffs.  It's

10   just a question as to whether under certain aspects of law it

11   amounts to something they can pursue.  But the officer has not

12   asserted qualified immunity at this point.

13        MR. VIADA:  The officer has asserted qualified

14   immunity in the answer.  The officer has moved to dismiss

15   certain claims in the case, which is Prong 1 of qualified

16   immunity, wrongful death --

17        THE COURT:  Okay.

18        MR. VIADA:  -- 14th amendment, things of that nature.

19   But I agree with Your Honor that there is a claim stated under

20   the fourth amendment.  As it's pled -- we disagree with the

21   facts as pled, but we'll take that up on summary judgment.

22        THE COURT: All right.  All right.  Mr. Butt, I'm

23   inclined to say that -- and I know that these policies get

24   turned over a lot, so as to pertinent training, supervision,

25   and discipline policies, I would like those turned over to the

1    -- and not allowing depositions or anything on that but just

2    written policies that Harris County has on that.  I would have

3    those turned over.

4            Mr. Moore, it may help you plead your claim.  It may

5    ultimately -- it can then be fairly before me on the next

6    motion to dismiss.  It may make it more difficult to plead your

7    claim, but I do think that you need to -- it's hard on the --

8    representing a plaintiff that's been injured to have any

9    insight as to what the policies are as to training,

10   supervision, et cetera.  But I think that you should have a

11   chance to look at that, and then seek to replead those claims

12   as best you can, and that -- it would give you a lot of

13   information to do so.  What are your thoughts?

14           MR. MOORE:  We would love more information or insight

15   into their training policies, so we agree, Your Honor.

16           THE COURT:  Okay.

17           MR. MOORE:  But we would submit that, you know, under

18   Twombly and Iqbal, we have pleaded enough facts to the point to

19   establish our claim and survive a 12(b)(6) motion to dismiss.

20           THE COURT:  The -- for the -- yeah.  I know that

21   there are facts pleaded as to an alleged history of Hardin with

22   an excessive use of force.  What I recall is an incident a week

23   prior using a stun gun with a suspect who was on the ledge of

24   an overpass, and then unspecified use of lethal force on

25   another individual in 2011.  Is there anything else as to

1    Hardin that you're aware of at this point?

2           MR. MOORE:  In regards to excessive force, that's all

3    we're aware of because that's what has been publicly commented

4    on by media.  There are some other disclaimer issues that we

5    were made apprised of as well, but in regards to excessive

6    force, those are the only two that we're aware of.

7           THE COURT:  Okay.  Mr. Butt, are you aware of any

8    other allegations of excessive force against this officer?

9           MR. BUTT:  I am not, Your Honor.  Before the hearing

10   today, I did not check his record, but that's all I'm aware of.

11   I submit that under Peterson versus City of Fort Worth, that's

12   not the sufficient amount of similar incidents.

13          THE COURT:  I agree with you as to what is pleaded

14   because the incidents -- the one that has more specificity is

15   just a very different type of incident than what happened here,

16   and you need to have some sort of similarities to that.

17          As to the other, which is that there was lethal force

18   used on an individual in 2011, we don't know what that

19   pertained to.

20          I would like -- how does Harris County keep its

21   records on this, records of allegations of excessive force

22   against officers?

23          MR. BUTT:  If they are investigated, the Internal

24   Affairs will have records of --

25          THE COURT:  And they'll have -- there'll just be a

1    file as to any instance of allegation of excessive force?

2           MR. BUTT:  I would presume so.  I don't -- I did not

3    see a 2011 file today, so I can't (indiscernible).

4           THE COURT:  And so that's a news report, but you

5    don't know whether there's any grounding in fact for that news

6    report.

7           MR. BUTT:  Yes, Your Honor.

8           THE COURT:  Okay.  All right.  So I'll order along

9    with the policies any files as to allegations of excessive

10   force against Officer Hardin also be turned over.

11          MR. BUTT:  Could that be done under --

12          THE COURT:  Under seal.

13          MR. BUTT:  -- seal?

14          THE COURT:  Absolutely.  Mr. Moore?

15          MR. MOORE:  We have no objection to those being

16   turned over under seal, but I do want to ask a point of

17   clarification.  Are we looking into issues of excessive force

18   or lethal force?  Because I know we've used those terms kind of

19   interchangeably.

20          THE COURT:  Well, I would assume any instance of

21   excessive force would encompass force when used that was

22   lethal.

23          MR. MOORE:  Correct.  So --

24          THE COURT:  I --

25          MR. MOORE:  I'm sorry.

1            THE COURT:  And it's allegations of excessive force.

2    It's not pertinent -- you know, if an officer in the line of

3    duty is -- with what has happened in the course of duty has led

4    to a fatality but no one says, "Hey, that was wrongful," I

5    don't know that that -- that is not something that really would

6    be pertinent to turn over at this point.

7            MR. MOORE:  Understood.  And the only reason why I

8    asked for clarification is because the incident that occurred

9    days prior to the incident involving the decedent, Officer

10   Hardin was alleged to have used a taser on top of an overpass.

11           THE COURT:  All right.  Well, I will say as to that

12   one because you do have at this point a factual pleading about

13   that, that any file as to that incident be turned over.

14           MR. MOORE:  Okay.

15           THE COURT:  But not more broadly.  It's not intended

16   to be a deep dive on his whole career to, you know, like any --

17   the whole file against him, allegations of excessive force,

18   which is what you're trying to plead here.

19           MR. MOORE:  Correct, Your Honor.

20           THE COURT:  Because you need to have instances --

21   other instances of excessive force that are demonstrating

22   something about him or about the policy and custom of Harris

23   County.

24           MR. MOORE:  Correct.

25           THE COURT:  Okay.

1          MR. MOORE:  It's --

2          THE COURT:  All right.

3          MR. MOORE:  It's the other incidences of excessive

4    force, but also that incident of excessive force that went

5    unpunished, and we would argue that based under the standing

6    orders that we were able to find online, he should've been

7    punished for that specifically, but --

8          THE COURT:  As to the ledge?

9          MR. MOORE:  As to the ledge, but he -- that went

10   unpunished, and days later he was --

11         THE COURT:  Okay.

12         MR. MOORE:  -- involved in this incident.

13         THE COURT:  All right.  Well, I'm ordering it as to

14   that file, any investigation be turned over.  Okay.

15         So I'll just note for the record and for purposes of

16   your repleading, I've indicated training policies will be

17   turned over.  Right now, the plaintiffs haven't identified any

18   inadequacies or deficiencies in the training of Hardin, and so

19   that needs to be specified more clearly.

20         And the same thing as to -- as to the failure to

21   supervise, there was no supervisory official that was involved

22   or there overseeing things.  And I didn't really see an attempt

23   to defend that claim in your response, and so if you want to

24   replead that claim, you'd need to somehow show something as to

25   a lack of supervision under the policy that you've got.  But

1    I'm not sure that that's really a theory that you're trying to

2    pursue.

3                MR. MOORE:  I understand what the Court's position

4    is, and, you know, I think with Defendants turning over those

5    policies, we would see if super -- extra supervision is

6    necessary after the event that occurred prior to the incident

7    the we're here for.

8                THE COURT:  Okay.  And then the failure to discipline

9    I think is going to sort of become part and parcel with the

10   incidents that you're going to see as to him, but you would

11   need to plead something better that shows causal connection to

12   what happened here or something that indicates deliberate

13   indifference by Harris County.  All right.  So more specificity

14   on that.

15               I think that's worked my way through all of what was

16   in the motions.  Mr. Butt's about to tell me I overlooked

17   something.

18               MR. BUTT:  Your Honor, I'm just asking may I file a

19   motion for protective order and confidentiality as --

20               THE COURT:  Yes.

21               MR. BUTT:  -- to those other --

22               THE COURT:  If you -- so for purposes of this case, I

23   have on my website a protective order that there'll be

24   sensitive material that's being -- if you would like me to

25   enter that order, you all agree on the form, and it'll be

1    entered.  And then things produced in this case can proceed

2    under that.

3                MR. BUTT:  (Indiscernible).

4                THE COURT:  Okay.  Mr. Moore?

5                MR. MOORE:  Just one more issue, Judge.  Is there

6    space for limited discovery regarding the incident that

7    occurred prior to the incident with Sergeant Hardin and

8    Roderick Brooks?  All we know now is what's been reported on in

9    the media, but obviously that --

10               THE COURT:  Is that the ledge?

11               MR. MOORE:  That's the ledge.

12               THE COURT:  No.  At -- the file will be made

13   available to you.  Any discovery that you would be wanting to

14   take on that is just -- the primary person that you would need

15   to talk to would be Officer Hardin, and that is being stayed

16   for other reasons that we've discussed.

17               MR. MOORE:  Understood.

18               THE COURT:  So for purposes now, that's not something

19   that can go forward.

20               MR. MOORE:  Okay, Judge.

21               THE COURT:  Okay.  Anything else?

22               MR. MOORE:  No, Your Honor.

23               THE COURT:  All right.  I know I will see you all

24   again, and I'll look forward to it.  Thank you.

25               MR. MOORE:  Thank you, Judge.  It was a pleasure.

1          THE COURT:  You are excused.  And for the others,

2     give me five minutes, and I will be back out for the next set

3     of motions.  Thank you.

4          (Hearing adjourned at 3:38 p.m.)

5                              *  *  *  *  *

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                      C E R T I F I C A T I O N

2

3          I, Sonya Ledanski Hyde, certified that the foregoing

4     transcript is a true and accurate record of the proceedings.

5

6

7

8     Sonya Ledanski Hyde

9

10

11

12

13

14

15

16

17

18

19

20    Veritext Legal Solutions

21    330 Old Country Road

22    Suite 300

23    Mineola, NY 11501

24

25    Date:  May 1, 2023