IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DEMETRIA BROOKS, *et al*, | § | |
|      *Plaintiffs*, | § | |
| | § | |
| v. | § | Civil Action No. 4:22-cv-3322 |
| | § | JURY TRIAL DEMANDED |
| HARRIS COUNTY SHERIFF'S | § | |
| OFFICE, *et al*, | § | |
|      *Defendants*. | § | |

---

## DEFENDANT HARDIN'S MOTION FOR SUMMARY JUDGMENT

---

Ramón G. Viada III
State Bar No. 20559350
Southern District I.D. 10689
VIADA & STRAYER
17 Swallow Tail Court
The Woodlands, Texas 77381
(281) 419-6338
rayviada@viadastrayer.com

COUNSEL FOR DEFENDANT
GARRETT W. HARDIN,
IN HIS INDIVIDUAL CAPACITY

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

I.     NATURE & STAGE OF PROCEEDING . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

II.    STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

       A.     Summary Judgment Evidence . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

       B.     Overview of the Incident . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

       C.     X26P Energy Weapon, Video Evidence, and Taser Logs . . . . . . . . . . .  6

III.   ISSUES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10

IV.    STANDARD OF REVIEW: QUALIFIED IMMUNITY ON MOTION FOR SUMMARY
       JUDGMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10

V.     ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  11

       A.     Qualified Immunity Prong 1: No Fourth Amendment Violation . . . .  11

              1.     Fourth Amendment Excessive Force: General Principles . . . .  11

              2.     Non-Deadly Moments of Force . . . . . . . . . . . . . . . . . . . . . . . . .  13

                     a. *Tasing* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  13

                     b. *Take-Down* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  13

                     c. *Punch* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  14

              3.     Deadly Force . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  14

       B.     Qualified Immunity Prong 2: No Violation of Clearly Established
              Fourth Amendment Rights . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  18

       C.     No Clearly Established Fourteenth Amendment Violation . . . . . . . .  19

VI.    RELIEF SOUGHT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  19

CERTIFICATE OF WORD COUNT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . [20](#)

CERTIFICATE OF CONFERENCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . [20](#)

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . [20](#)

# TABLE OF AUTHORITIES

**CASES**                                                                 Page(s)

*Anderson v. Estrada,*
    140 F.4th 634 (5th Cir. 2025) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Barnes v. Felix,*
    __ U.S. __, 145 S. Ct. 1353 (2025) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Batyukova v. Doege,*
    994 F.3d 717 (5th Cir. 2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Betts v. Brennan,*
    22 F.4th 577 (5th Cir. 2022) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Boyd v. McNamara,*
    74 F.4th 662 (5th Cir. 2023) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Brown v. Callahan,*
    623 F.3d 249 (5th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*City of Tahlequah v. Bond,*
    595 U.S. 9 (2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Elizondo v. Green,*
    671 F.3d 506 (5th Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Est. of Parker v. Miss. Dep't of Pub. Safety,*
    140 F.4th 226 (5th Cir. 2025) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Francis v. Garcia,*
    702 Fed. Appx. 218 (5th Cir. 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Garcia v. Orta,*
    47 F.4th 343 (5th Cir. 2022) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Garza v. Briones,*
    943 F.3d 740 (5th Cir. 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Graham v. Connor,*
490 U.S. 386 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 15

*Griffin v. City of Sugar Land*,
No. H-18-3121, 2019 U.S. Dist. LEXIS 5837,
2019 WL 175098 (S.D. Tex. Jan. 11, 2019) (Lake, J.) . . . . . . . . . . . . . . . . . 13

*Griggs v. Brewer*,
841 F.3d 308 (5th Cir. 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Henderson v. Harris County*,
51 F.4th 125 (5th Cir. 2022) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Ikerd v. Blair*,
101 F.3d 430 (5th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Kingsley v. Hendrickson*,
576 U.S. 389 (2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Kisela v. Hughes*,
584 U.S. 100 (2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Macias v. Watkins*,
No. 23-40580, 2024 U.S. App. LEXIS 17456,
2024 WL 3427047 (5th Cir. July 16, 2024) . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Manis v. Lawson*,
585 F.3d 839 (5th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*McManemy v. Tierney*,
970 F.3d 1034 (8th Cir. 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Nolen v. Minden Police Dep't*,
48 Fed. Appx. 481, 2002 WL 31049579 (5th Cir. Sept. 6, 2002),
*aff'd*, 787 F. App'x 244 (5th Cir. 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Ontiveros v. City of Rosenberg*,
564 F.3d 379 (5th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Poole v. City of Shreveport*,
691 F.3d 624 (5th Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Priest v. Grazier*,
860 Fed. Appx. 343 (5th Cir. 2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Ratliff v. Aransas County*,
948 F.3d 281 (5th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 17

*Rockwell v. Brown*,
    664 F.3d 985 (5th Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Rubin v. De La Cruz*,
    No. 24-20015, 2025 U.S. App. LEXIS 5643,
    2025 LX 263721, 2025 WL 764603 (5th Cir. Mar. 11, 2025) . . . . . . . . . . . . 17

*Rubin v. De La Cruz*,
    No. 4:21-CV-01148, 2023 U.S. Dist. LEXIS 220675,
    2023 WL 8602782 (S.D. Tex. Dec. 12, 2023), *aff'd*,
    2025 U.S. App. LEXIS 5643 (5th Cir. Mar. 11, 2025) . . . . . . . . . . . . . . . 17, 18

*Salazar v. Molina*,
    37 F.4th 278 (5th Cir. 2022) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Salazar-Limon v. City of Houston*,
    826 F.3d 272 (5th Cir. 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Scott v. Harris*,
    550 U.S. 372 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Stanley v. City of Baytown*,
    Tex., No. Civ. A. H-04-2106, 2005 WL 2757370,
    (S.D. Tex. Oct. 25, 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Tucker v. City of Shreveport*,
    998 F.3d 165 (5th Cir. 2021),
    *cert. denied*, 142 S. Ct. 419 (U.S. 2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*United States v. Quiver*,
    805 F.3d 1269 (10th Cir. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Valderas v. City of Lubbock*,
    937 F.3d 384 (5th Cir. 2019) (per curiam) . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Williams v. Bramer*,
    180 F.3d 699 (5th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Zimmerman v. Cutler*,
    657 F. App'x 340 (5th Cir. 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

## Rules & Statutes

Fed. R. Civ. P. 56 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Tex. Penal Code § 22.02(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Tex. Penal Code § 29.02 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Tex. Penal Code § 38.03(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Tex. Penal Code § 38.04(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Tex. Penal Code § 38.14 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DEMETRIA BROOKS, *et al*, | § | |
| *Plaintiffs*, | § | |
| | § | |
| v. | § | Civil Action No. 4:22-cv-3322 |
| | § | JURY TRIAL DEMANDED |
| HARRIS COUNTY SHERIFF'S | § | |
| OFFICE, *et al*, | § | |
| *Defendants*. | § | |

---

## DEFENDANT HARDIN'S MOTION FOR SUMMARY JUDGMENT

---

Defendant Garrett Hardin ("Sgt. Hardin") moves for summary judgment. *See* FED. R. CIV. P. 56.

## I.  NATURE & STAGE OF PROCEEDING.

This § 1983 suit grows out of an officer involved shooting of Roderick Brooks ("Brooks") on July 8, 2022. Brooks, a robbery suspect, grabbed Sgt. Hardin's taser while resisting arrest, tased Hardin once with it, and while armed with the taser threatened to incapacitate or injure Hardin with it. Hardin shot Brooks justifiably to end the threat.

Plaintiff Demetria Brooks ("Plaintiff"), Roderick Brooks's sister, brings this survival action as the executor of Brooks's Estate, claiming that Hardin's use of non-deadly and deadly force during this encounter was unreasonably excessive, in violation of the Fourth and Fourteenth Amendments. Hardin has asserted qualified immunity. [Dkt. 55, p. 10].

II. **STATEMENT OF FACTS**.

    A.     **Summary Judgment Evidence**.

The summary judgment record consists of the following:

**Exhibit 1.**     Declaration of Garrett Hardin.

**Exhibit 2.**     Aug. 9, 2025 Declaration of Bryan Chiles (Expert Opinion).

**Exhibit 3.**     Declaration of Mark Kroll, Ph. D.

**Exhibit 4.**     Oct. 6, 2025 Declaration of Bryan Chiles (Authenticating Synchronized Video).

**Exhibit 5.**     Declaration of Rafael A. Garcia, M.D.

**Exhibit 6.**     Hardin Body Camera Video (Unsynchronized).

**Exhibit 7.**     Hardin Body Camera Video (Time-Synchronized).

**Exhibit 8.**     Frames of Time-Synchronized Video.

    B.     **Overview of the Incident**.

On July 8, 2022, Sgt. Hardin, in uniform and on patrol in a marked Harris County Sheriff's Department vehicle, was dispatched to the scene of a robbery at a Dollar General store. *See* Hardin Declar, ¶ 5 (**Exhibit 1**). Hardin spotted the person later identified as Brooks, matching the suspect's description, in the area of 15000 Kuykendahl Road, in Houston, Texas. *Id.*, ¶¶ 6-7. Hardin activated his emergency lights and commanded Brooks to "stop" and "come here." *Id.*, ¶¶ 8-9. Brooks fled on foot. Hardin exited his vehicle and chased Brooks at a fast run for what appears to be about 50 yards. *Id.*,¶¶ 9-10; *see also* Unsynchronized Body Camera Video (UBVC) (**Exhibit 6**), Time Stamps (TS) 1:23-1:36. Although Brooks was not reported to have

2

used a weapon to commit the robbery, Hardin considered him violent and possibly armed. *See* Hardin Declar., ¶ 6.

As Hardin caught up with him, Hardin unholstered his taser and commanded Brooks to "stop or I'm going to tase you!" Brooks continued running through a gas station parking lot and collided with a car leaving the premises. *See* Hardin Declar., ¶ 10; Synchronized Body Camera Video (SBCV) (**Exhibit 7**), TS 18:20:29-18:20:38. To prevent Brooks from leading the chase into more traffic and perhaps hijack a car, Hardin deployed the taser probes, but with little or no visible effect. *See* Hardin Declar., ¶¶ 11-13; SBCV, TS 18:20:39-18:20:43. The autopsy later performed of Brooks's body showed neither probe broke the skin. *See* Garcia Declar. (**Exhibit 5**) & attached Autopsy Rpt., p. 2, and Trial Testimony, pp. 32-33. Sgt. Hardin then tackled Brooks to the ground. *See* Hardin Declar., ¶¶ 13-14; SBCV, TS 18:20:39-18:20:44.

During the ensuing hands-on struggle, Hardin lost control of his taser, which slid to the ground within Brooks's reach. *See* Hardin Declar., ¶¶ 13-14; SBCV, TS 18:20:39-18:20:44. Initially, for about three seconds, Brooks seemed docile, so Sgt. Hardin attempted to radio for back-up. *See* Hardin Declar., ¶ 15. But Brooks suddenly renewed his struggle, managing to push both himself off the ground as well as Hardin, who was on top attempting to keep Brooks pinned to the ground. Hardin threw a punch which glanced the side of Brooks's head. *Id.*, ¶¶ 15-16; SBCV, TS 18:20:45-18:20:55.

The encounter became deadly over the next ten seconds. Between approximately 18:20:54 and 18:20:57 HRS, Brooks picked up the taser, switched it from "safe" to "active" mode, and pulled the trigger. *See* Hardin Declar., ¶¶ 17-18; SBCV, TS 18:20:54-

18:20:55; Chiles Declar. (**Exhibit 2**), and attached Expert Report, with special emphasis on p. 4 (chain of custody of Hardin's taser), pp. 7-8 (discussing trilogy logs, including event log), and pp. 22-24 (discussion of Brooks's initial activation of the taser). Frames 00723-1020 (**Exhibit 8**) of the synchronized BCV show this event, with Frame 00761 (18:20:55.359) as an exemplar:



Hardin, tangled in frayed taser wires and positioned on one or both of the deployed probes, experienced a powerful, 1.25 second electrical shock, at approximately 18:21:00 HRS (6:21 PM). *See* Hardin Declar., ¶ 18; *see also* Chiles Rpt., p. 16 (event log analysis), pp. 17-19 (pulse graph analysis for corroborating Hardin being shocked at that time), and pp. 23-24 (discussion of Brooks's initial activation of the taser). Sgt. Hardin drew his handgun and warned Brooks twice to drop the taser "or I will shoot you." *See* Hardin Declar.,¶ 18; SBCV, TS 18:20:55-18:21:00. At approximately 18:21:04, Brooks briefly relinquished control of the taser. *See id*., ¶ 19; SBCV, TS 18:20:55-18:21:00. Two seconds later, at 18:21:06, Brooks picked it up again and rearmed it before Sgt. Hardin was able to brush it out of his reach. *Id*., ¶ 21; SBCV, TS 18:21:01-

18:21:06. Frames 01072-1073 (**Exhibit 8**) of the synchronized BCV show Brooks with the taser in his right hand, the red dot of the pointer light visible on the driveway, showing the taser was in the armed mode and immediately ready to deliver another powerful shock to Hardin:



*Figure 3.12 – Frame 3530 - X26P armed on right side of Mr. Brooks*

Chiles Rpt., pp. 24-27 (**Exhibit 2**); Frames 03530 (**Exhibit 8**); SBCV, TS 18:21:01-18:21:06.

Hardin has testified:

> Even after the shock ended, I believed I was still making physical contact with the probes or wiring such that another trigger pull could shock me again, perhaps more powerfully than before. Everything was happening in a matter of a few seconds so there was no time or any safe opportunity for me to untangle the wires and separate myself from Brooks. From training and experience, I knew that a CED, even in drive-stun mode, could cause serious personal injury if the electrodes were applied to my face, especially my eyes. I was

taught in training classes that drive-stunning a person in the eyes could cause permanent blindness, and that drive stunning a person in the neck could cause temporary lockup. From training and experience I was also aware that because my body was touching the deployed probes and/or frayed wires of the taser, Brooks could have immobilized me merely by drive-stunning my body and thereby completing the incapacitation circuit. Had he done so, I would have been at significant risk of losing my grip on my firearm and dropping it where he could pick it up and use it against me.

Hardin Declar., ¶ 20.

Fearing that Brooks might blind or incapacitate him with the armed taser, Sgt. Hardin killed Brooks instantly with a single shot to the neck. Sgt. Hardin did everything to avoid having to use deadly force – the necessity to employ it was a last resort. *Id.*, ¶¶ 21-22.

### C.     X26P Energy Weapon, Video Evidence, and Taser Logs.

The basic operation and function of the Taser X26P is described by the Declaration of Bryan Chiles, a senior investigations engineer for the manufacturer of the device, Axon Enterprise, Inc. *See* Chiles Report, **Exhibit 2**. The effect on the human body of a taser used in drive-stun mode (after probes are launched) is described in the Declaration of Mark Kroll, Ph. D., a biomedical scientist who has specialized in areas including bioelectricity. **Exhibit 3.**

According to Mr. Chiles, a taser has two modes of operation – "probe mode" or "drive-stun" mode. *See* Rpt., pp. 12-13. In probe mode, the taser propels two barbed probes attached to the taser by thin, insulated wires. If both probes lodge into the target, it delivers an electric shock through the wires into the person. In this mode, the taser overrides the central nervous system and can cause complete neuromuscular

incacitation ("NMI"). *Id.* In drive-stun mode, the electrodes at the end of the device is pressed against a person's body and the trigger is pulled, resulting in pain, typically a burning sensation; but if applied properly, a drive-stun does not disrupt muscle control or cause serious injury. *Id.*

However, a drive-stun can cause serious personal injury, such as permanent blindness, if applied to the face near the eyes. *See* Kroll Declaration (**Exhibit 3**), p. 9. A drive-stun can also cause NMI when pressed against a person's neck or if applied to a person already in contact with probes or frayed wires, as Hardin was. *Id.*, pp. 6-8.

As Mr. Chiles has explained, an X26P taser is set to discharge for five seconds for each application of the trigger. Chiles Rpt., p. 5. The X26P Sgt. Hardin used was equipped with a mini-computer that produced electronic data logs, two of which are pertinent – event logs and pulse logs. Event logs record the date, time, and details of certain events that occur within the X26P device, including a timestamp for every time the weapon is "armed" (safety switch turned off), the trigger is pulled, and the safety switch is returned to the "safe" position. A "trigger" timestamp is made when the trigger is pulled, not for the duration or at the end of the five-second active cycle. The event logs also provide information that allow for any clock drift within the weapon to be synchronized with "official" U.S. time. *Id.*, pp. 7-11.

As part of his expert assignment in this case, Mr. Chiles has added time-stamp markers (**Exhibit 7**) to the pertinent portion of Hardin's body camera video-recording (**Exhibit 6**), which synchronizes the events logged by Hardin's taser with official U.S. time. *See* Chiles Declaration (**Exhibit 4**), The event logs show that Hardin's weapon

fired twice on July 8, 2022, first at 18:20:39 (6:20:39 PM), local time, while Hardin controlled it, and again 18 seconds later, at 18:20:57 (6:20:57 PM), while Brooks did. The event logs show that Brooks rearmed the weapon at 18:21:06 (6:21:06 PM), the last second or two before Hardin shot him. *See* Chiles Rpt. (**Exhibit 2**), pp. 16-27.

A taser, when armed and the trigger pulled, produces $19 \pm 1$ pulses per second. The pulse log is a record of every pulse of energy the weapon discharges. With pulse data, an analyst can determine whether or not a connection was made, and if so, whether the load level is consistent with the current passing through a human body. Chiles Rpt., pp. 6-13.

Mr. Chiles has analyzed the pulse logs for both of the activation sequences recorded by Sgt. Hardin's taser on July 8, 2022. Chiles Rpt., pp. 15-29. He concluded that Sgt. Hardin's activation of the taser at 18:20:39 – to stop Brooks from fleeing – was consistent either with no connection or possibly with a few of the pulses discharging into skin and fat tissue. *Id.*, pp. 17-18. This conclusion is corroborated by the autopsy finding of Dr. Rafael Garcia, an assistant medical examiner, who found no evidence of any wounds on Brooks's body from the taser probes; the probes did not penetrate the multiple layers of clothing Brooks was wearing at that time. *See* Garcia Declar. (**Exhibit 5**) & attached Autopsy Rpt., p. 2, and attached Trial Testimony, pp. 32-33.

Mr. Chiles also reviewed the pulse logs recording the second activation of the device, which occurred at 18:20:57 when Brooks was holding it and pulled the trigger. Chiles Rpt., pp. 18-19. Mr. Chiles concluded that this pulse data showed a discharge into human flesh for the final 1.25 seconds of the five-second activation cycle (at

approx. 18:21.00). *Id.* The pulse logs thus corroborate Sgt. Hardin's testimony that Brooks tased him the first time he picked up Hardin's taser. According to Mr. Chiles, based upon his analysis of Sgt. Hardin's body camera footage, that taser wires wrapped around Sgt. Hardin's firearm and the probe lying on the ground to the right of Brooks were each a potential point of contact between Hardin and the taser when Brooks activated it, and these points of contact account for the 1.25 second electrical shock which Hardin felt during the struggle. Chiles Rpt., pp. 28-34. Still photos of a probe lying on the ground beside Brooks's right side and of Hardin's wire-entangled handgun (**Exhibit 8**, Frame 01015) are embedded below:

 

**Exhibit 8**, Frames 1015, 4076.

When Hardin used deadly force, the risk of serious injury or incapacitation was present. As Mr. Chiles found:

> The wire across Mr. Brooks' back, the wire wrapped around Sgt. Hardin's firearm, and the probe on the ground to the right of Mr. Brooks were each a potential point from where

9

the pulses that discharged into a medium-high impedance load in the last 1.25 seconds of Activation Sequence #643 could have made a connection from. Each of them were also potential points in which a connection could have been made with potential for NMI if the X26P energy weapon's trigger was to have been pulled again. Because the X26P energy weapon was armed when Mr. Brooks held the weapon for the second time, a pull of the trigger would have only taken a small fraction of a second to occur. In addition, just because Sgt. Hardin only felt pain during Activation Sequence #643 does not mean another activation would have only resulted in pain. Any shift in position of his body in relation to the wires and probes would result in a new risk of NMI that could have caused incapacitation of Sgt. Hardin, including loss of control of his firearm or any of his equipment that could be converted into a weapon.

Chiles Rpt., pp. 28-29.

## III. ISSUES.

1.  **Immunity Prong 1**: Whether Plaintiff has identified legally sufficient evidence to prove that an objectively reasonable police officer, knowing what Hardin knew, could not have believed that the force Hardin used was reasonable.

2.  **Immunity Prong 2**: Whether Plaintiff has established every reasonable officer would have known that the force Sgt. Hardin applied was clearly unlawful under then-existing governing federal standards.

3.  **Due Process**: Whether a substantive due process claim exists on these facts.

## IV. STANDARD OF REVIEW: QUALIFIED IMMUNITY ON MOTION FOR SUMMARY JUDGMENT.

*Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010), articulates the well-established standards for analyzing immunity-based motions for summary judgment..The plaintiff bears the burden of negating qualified immunity, but all inferences are drawn in his favor. *Id*. The defense has two prongs: whether an official's

conduct violated a constitutional right of the plaintiff; and whether the right was clearly established at the time of the violation. Id. Whether an official's conduct was objectively reasonable is a question of law for the court, not a matter of fact for the jury. *Id.*

Sgt. Hardin's encounter with Brooks was captured mostly by body-worn camera, and [b]ecause video evidence is available, [the Court is] required to 'view the facts in the light depicted by the videotape.'" *Boyd v. McNamara*, 74 F.4th 662, 665 (5th Cir. 2023) (quoting *Scott v. Harris*, 550 U.S. 372, 381 (2007))). *Scott v. Harris,* which assigns conclusive weight to clear video-recorded evidence, "does not limit its holding to video evidence," as "[c]ourts have applied this holding using other types of evidence capable of utterly discrediting the plaintiff's version of the facts." *Garcia v. Orta*, 47 F.4th 343, 350, n.2 (5th Cir. 2022) (citing cases, including *McManemy v. Tierney*, 970 F.3d 1034, 1038 (8th Cir. 2020), which assigned conclusive weight to taser logs).

## V.  ARGUMENT.

### A.  Qualified Immunity Prong 1: No Fourth Amendment Violation.

#### 1.  Fourth Amendment Excessive Force: General Principles.

A plaintiff asserting an excessive force claim under the Fourth Amendment must demonstrate: "(1) an injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *Poole v. City of Shreveport*, 691 F.3d 624, 628 (5th Cir. 2012). "Determining whether the force used was clearly excessive and clearly unreasonable 'requires careful attention to the facts and circumstances of each particular case, including [1] the

severity of the crime at issue, [2] whether the suspect poses an immediate threat to the safety of the officers or others, and [3] whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Anderson v. Estrada*, 140 F.4th 634, 642 (5th Cir. 2025) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). "A court must make this determination from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight," *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015), considering the "totality of the circumstances." *Barnes v. Felix*, __ U.S. __, 145 S. Ct. 1353, 1357-58 (2025). This inquiry is based on the totality of the circumstances at the time of events and must consider "the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 397.

When there are distinct moments of force challenged by the plaintiff as excessive, it is proper to analyze each moment of force separately. *See Tucker v. City of Shreveport*, 998 F.3d 165, 171 (5th Cir. 2021) (tackling a suspect and then punching and kicking him while on the ground "are 'two distinct moments of force' that must be separately analyzed"). Four distinct moments of force are alleged to be excessive in this case: Sgt. Hardin's

(1)     deployment his taser during his foot pursuit of Brooks;

(2)     takedown or tackle of Brooks;

(3)     punch to Brooks's face during the hands-on struggle on the ground; and

(4)    the fatal shot that killed Brooks after Brooks tased Hardin and refused to comply with Sgt. Hardin's command to drop the armed taser.

Each will be analyzed in turn.

## 2.    Non-Deadly Moments of Force.

a.  *Tasing.*  Since no taser prong penetrated the multiple layers of clothing Brooks was wearing , any injury caused by Hardin's deployment of taser probes at Brooks was *de minimis* and thus non-actionable. *See Stanley v. City of Baytown*, Tex., No. Civ. A. H-04-2106, 2005 WL 2757370, at *6 (S.D. Tex. Oct. 25, 2005); *Ikerd v. Blair*, 101 F.3d 430, 434 (5th Cir. 1996) (*de minimis* force not actionable). In any event, Hardin's use of the taser to halt Brooks, a fleeing, possibly armed robbery suspect, was objectively reasonable. Brooks was darting dangerously into traffic and had disregarded Hardin's prior warning that the taser would be deployed if he refused to stop. *See Zimmerman v. Cutler*, 657 F. App'x 340, 346 (5th Cir. 2016) (no violation to tase fleeing misdemeanant); *see also Betts v. Brennan*, 22 F.4th 577, 583-84 (5th Cir. 2022).

b.  *Take-Down.*  "[I]t [is] neither clearly excessive nor objectively unreasonable for []officers to give chase and . . . tackle [a suspect] in order to stop him from fleeing." *Griffin v. City of Sugar Land*, No. H-18-3121, 2019 U.S. Dist. LEXIS 5837, 2019 WL 175098, at *8 (S.D. Tex. Jan. 11, 2019) (Lake, J.) (citing *Nolen v. Minden Police Dep't*, 48 Fed. Appx. 481, 2002 WL 31049579, at *2 (5th Cir. Sept. 6, 2002)), *aff'd*, 787 F. App'x 244, 245 (5th Cir. 2019) (immunity prong 2); *see also Priest v. Grazier*, 860 Fed. Appx. 343, 347 (5th Cir. 2021) (citing cases).

c. *Punch.* Sgt. Hardin's single glancing punch to the side of Brooks's head was objectively reasonable and not clearly excessive, given that Brooks was actively resisting. *Griggs v. Brewer*, 841 F.3d 308, 315 (5th Cir. 2016); *Priest*, 860 Fed. Appx. at 349 ("if Priest was resisting, Fenwick's hand strikes did not violate clearly established law").

### 3. Deadly Force.

"An officer's use of deadly force is not excessive, and thus no constitutional violation occurs, when the officer reasonably believes that the suspect poses a threat of serious harm to the officer or to others." *Rockwell v. Brown*, 664 F.3d 985, 991 (5th Cir. 2011) (internal quotes omitted). "[W]hen 'confronting an unpredictable man armed with a dangerous weapon,' law enforcement officers 'may use deadly force . . . without violating the Fourth Amendment.'" *Ratliff v. Aransas County*, 948 F.3d 281, 288 (5th Cir. 2000) (quoting *Garza v. Briones*, 943 F.3d 740, 745 (5th Cir. 2019)). "[I]t is not unreasonable for law enforcement officers to use deadly force against an armed suspect, irrespective of the pointed direction of that suspect's weapon, when the suspect has ignored orders to drop the weapon and has displayed erratic or aggressive behavior indicating that he may pose an imminent threat." *Ratliff*, 948 F.3d at 288 (further noting that before 2020, "our cases had clearly established that deadly force is not unreasonable when an armed suspect has ignored multiple orders to disarm and has either pointed his weapon at a person or used the weapon in such a manner as to make a threatening gesture").

All of the *Graham* factors support Sgt. Hardin's use of deadly force to end Brooks's threat to use Hardin's taser to inflict serious injury on Hardin.

As to the seriousness-of-the-crime factor, Hardin had reason to believe Brooks had already committed a string of violent felonies. *See* TEX. PENAL CODE § 29.02 (robbery-second degree felony); *id.*, at § 38.04(a) (evading arrest – at least a Class A misdemeanor); *id.*, § 38.03(c) (resisting arrest – Class A misdemeanor); § 38.14 (taking possession of peace officer's stun gun - third degree felony); § 22.02(a) (aggravated assault on a peace officer - first degree felony); § 38.03(d) (resisting arrest with a deadly weapon - third degree felony).

As to the active resistance/evading factor, Sgt. Hardin's body camera video proves that Brooks had fled from Hardin and was actively resisting arrest when Hardin shot him. Brooks was not shot attempting to surrender. *See Batyukova v. Doege*, 994 F.3d 717, 727 (5th Cir. 2021) (no evidence of surrender held operative deadly force justification factor).

Most importantly, Sgt. Hardin had probable cause to believe that Brooks posed a significant threat of serious bodily injury or death. In this context, "[p]robable cause exists when, for example, the 'officer reasonably believes that a suspect was attempting to use or reach for a weapon.'" *Macias v. Watkins*, No. 23-40580, 2024 U.S. App. LEXIS 17456, *5, 2024 WL 3427047 (5th Cir. July 16, 2024) (quoting *Valderas v. City of Lubbock*, 937 F.3d 384, 390 (5th Cir. 2019) (per curiam)).

Brooks and Sgt. Hardin were in close proximity, in a hand-to-hand struggle on the ground. *See, e.g.*, *Elizondo v. Green*, 671 F.3d 506, 510 (5th Cir. 2012) (no excessive

deadly force when the individual "ignored repeated instructions to put down the knife, . . . [was] in close proximity to [the officer], and [was] moving closer"). Brooks picked up Hardin's taser, activated it, and pulled the trigger. Hardin, still tangled in frayed wires and touching live probes, felt the powerful electrical shock for 1.25 seconds. A reasonable officer in Hardin's situation could reasonably believe, as Hardin did in fact believe, that Brooks was capable of operating the taser as a weapon. *See Francis v. Garcia*, 702 Fed. Appx. 218, 222 (5th Cir. 2017) (considering suspect's capability of using a weapon to harm the officer as part of the reasonableness calculus) (citing *Ontiveros v. City of Rosenberg*, 564 F.3d 379, 382-85 (5th Cir. 2009)).

As Hardin had been trained (*see* Hardin Declar., ¶¶ 2, 20), the taser in drive-stun mode was capable of inflicting serious bodily injury or of incapacitating him, which would have allowed Brooks to grab Hardin's gun and kill him. *See* Chiles Rpt., pp. 28-29; Kroll Declar., pp. 6-9. *See also, e.g.*, *United States v. Quiver*, 805 F.3d 1269, 1272 (10th Cir. 2015) ("We conclude that a Taser – even in drive-stun mode – is a dangerous weapon. In either drive-stun or probe mode, a Taser is 'capable of inflicting . . . serious bodily injury,'" further noting that "as the burn marks to Officer Friday's thigh show, a Taser in drive-stun mode is capable of causing serious bodily injury if applied to a sensitive spot, for instance, an eye").

Hardin did not immediately resort to deadly force. He did not even draw his gun until he was shocked. He screamed for Brooks to drop the taser and warned him that he would shoot Brooks if he did not. Despite the warning, Brooks did not relinquish control of the weapon for another 3 seconds after tasing Hardin. When Brooks did move

his hand away briefly, Hardin can be seen in the video pointing his gun away from Brooks and reaching for the taser to brush it out of Brooks's reach. However, a second or two later, Brooks picked it up again and rearmed it, causing Sgt. Hardin, still in dangerously close proximity and frightened by the initial shock, to believe Brooks could and would tase him a second time. Shooting Brooks was his last resort. *See* Hardin Declar., ¶ 22. That belief was objectively reasonable and justified the use of deadly force. *See Ratliff*, 948 F.3d at 289; *Garza v. Briones*, 943 F.3d 740, 747 (5th Cir. 2019)). The Fifth Circuit has "never required officers to wait until a defendant turns towards them, with weapon in hand, before applying deadly force to ensure their safety." *Salazar-Limon v. City of Houston*, 826 F.3d 272, 279 n.6 (5th Cir. 2016).

In a strikingly similar case, the Fifth Circuit affirmed an immunity-based summary judgment where, as here, the "officer used deadly force only after he had been tased, and the taser wires were attached to him, and Turner [the decedent], who had been actively resisting arrest, was attempting to rise from the ground with the officer's taser in hand." *Rubin v. De La Cruz*, No. 24-20015, 2025 U.S. App. LEXIS 5643, *6, 2025 LX 263721, 2025 WL 764603 (5th Cir. Mar. 11, 2025). In granting summary judgment, District Judge George Hanks wrote: "a competent officer could have reasonably believed that Turner could use the taser to incapacitate or disarm him and take his life." *Rubin v. De La Cruz*, No. 4:21-CV-01148, 2023 U.S. Dist. LEXIS 220675, *12, 2023 WL 8602782 (S.D. Tex. Dec. 12, 2023), *aff'd*, 2025 U.S. App. LEXIS 5643 (5th Cir. Mar. 11, 2025), also reasoning:

> Under the facts established by the summary judgment evidence, a competent officer could have reasonably believed

that the alleged temporary localized pain from a taser [in drive-stun mode] - while not "likely" to cause "injury" - could nevertheless distract him or otherwise lead to the suspect gaining control of his service weapon and ending his life. A competent officer could have also reasonably believed that he needed to act quickly to secure his safety.

*Id.*, 2023 U.S. Dist. LEXIS 220675, *13-14.

This case presents an even stronger justification for the use of deadly force than the situation at issue in *Rubin*. Hardin was within easy reach of Brooks, who had the activated taser in his hand and could have instantly delivered another powerful electric shock to Hardin by a simple trigger pull. Accordingly, Plaintiff's Fourth Amendment deadly force claims against Hardin should be dismissed.

**B.    Qualified Immunity Prong 2: No Violation of Clearly Established Fourth Amendment Rights**.

In the qualified immunity context, "[r]ights are 'clearly established' when 'existing precedent squarely governs the specific facts at issue,' not when a rule is merely 'suggested by then-existing precedent.'" *Henderson v. Harris County*, 51 F.4th 125, 132 (5th Cir. 2022) (first quoting *Kisela v. Hughes*, 584 U.S. 100, 104 (2018); then quoting *City of Tahlequah v. Bond*, 595 U.S. 9, 13 (2021)). The officer involved shooting in this case occurred on July 8, 2022. The *Rubin* case, discussed above, handed down by the Fifth Circuit on March 11, 2025, clearly held no clearly established violation essentially the same set of facts. *See Rubin v. De La Cruz*, 2023 U.S. Dist. LEXIS 220675, *16-17, *aff'd in relevant part*, 2025 U.S. App. LEXIS 5643 (5th Cir. Mar. 11, 2025). The Court should grant summary judgment for Hardin as to each moment of claimed excessive force at issue in this case.

### C. No Clearly Established Fourteenth Amendment Violation.

Although excessive force claims may sometimes be brought under the Fourteenth Amendment, such claims "must be analyzed under the Fourth Amendment when that more specific constitutional provision applies." *Est. of Parker v. Miss. Dep't of Pub. Safety*, 140 F.4th 226, 244 (5th Cir. 2025). Since "the parties do not dispute that a seizure occurred;" "the Fourth Amendment governs. That alone forecloses Plaintiff['s] Fourteenth Amendment claims." *Id*.

## VI. RELIEF SOUGHT.

Accordingly, Defendant Garrett Hardin requests that the Court grant summary judgment in his favor, dismiss Plaintiff's claims against him with prejudice, and award Defendant any other and further relief to which he may be entitled, including costs of court.

Respectfully submitted,

VIADA & STRAYER

By: /s/ **Ramón G. Viada III**
    Ramón G. Viada III
    State Bar No. 20559350
    17 Swallow Tail Court
    The Woodlands, Texas 77381
    (281) 419-6338
    rayviada@viadastrayer.com

ATTORNEY FOR DEFENDANT
GARRETT W. HARDIN,
IN HIS INDIVIDUAL CAPACITY

## CERTIFICATE OF WORD COUNT

Pursuant to the Court's Procedure 18(c), I certify that this motion contains 4,715 words.

/s/ ***Ramón G. Viada III***
Ramón G. Viada III

## CERTIFICATE OF CONFERENCE

I certify that on October 29, 2025, I conferred by email with all counsel of record about whether the relief sought by this motion will be opposed. Mr. Butt for the County is unopposed; Mr. Moore for Plaintiff is opposed.

/s/ ***Ramón G. Viada III***
Ramón G. Viada III

## CERTIFICATE OF SERVICE

I certify that all counsel of record have been served a true and correct copy of this document by electronic submission for filing and service through the Electronic Case Files System of the Southern District of Texas on October 30, 2025.

/s/ ***Ramón G. Viada III***
Ramón G. Viada III