## AFFIDAVIT OF NICHOLAS G. BLOOMFIELD

**STATE OF NEW MEXICO**
**COUNTY OF SAN JUAN**

BEFORE ME, the undersigned authority, personally appeared Nicholas G. Bloomfield, who being duly sworn, stated as follows:

1. My name is Nicholas G. Bloomfield. I am over the age of eighteen, of sound mind, and competent to make this affidavit.

2. I am a police-practices and use-of-force expert with more than 22 years of professional experience in law-enforcement training, tactical assessment, use-of-force investigations, and police-practice standards. My background includes service as a [former law-enforcement officer / trainer / consultant / expert witness], extensive instruction in modern police tactics, and work conducting operational reviews of critical incidents for agencies across the United States.

3. A copy of my curriculum vitae, detailing my qualifications, publications, and professional history, is attached as Exhibit A.

4. I was retained by counsel for Plaintiff as an expert in police practices and use of force in the federal matter Brooks-Glaze v. Hardin, et al., No. 4:22-cv-03322 (S.D. Tex.).

5. I have personal knowledge of the matters set forth herein and base this affidavit on my review of the materials provided to me, my training and experience, and my independent analysis conducted pursuant to generally accepted professional standards.

6. In forming my opinions, I reviewed the following materials, among others:

    a. Body-worn camera footage from Sergeant Garrett Hardin on July 8, 2022, including synchronized versions and still-frame image files (0010000.bmp–0011275.bmp).
    b. The Harris County Sheriff's Office Incident Packet (No. 2207-02922).
    c. Sworn statements and investigative interviews of Sergeant Hardin.
    d. Autopsy report and related materials from the Harris County Institute of Forensic Sciences concerning the death of Roderick Brooks.
    e. Taser X26P event logs and related data submitted by Defendant Hardin, including materials referenced in the declarations of Axon engineer Bryan Chiles and Dr. Mark Kroll.
    f. AXON manufacturer materials, including operational guidance for the TASER X26P and its drive-stun limitations.
    g. Professional policing standards and authoritative scholarship, including IACP publications on foot pursuits, use-of-force frameworks, and tactical decision-making; Stoughton, Noble & Alpert's *Evaluating Police Uses of Force* (2020);

Garrett & Stoughton, *A Tactical Fourth Amendment*, 103 Va. L. Rev. 211 (2017); and related literature cited in my written report.

h. The reenactment conducted by the Harris County Sheriff's Office Tactical Training and Officer Safety Unit in the parallel criminal investigation of Sergeant Hardin's conduct, which reproduced the electrical conditions of the TASER encounter and confirmed that the device could not produce neuromuscular incapacitation under the circumstances of this incident.

7. All materials listed above are of the type reasonably relied upon by experts in my field.

8. Based on the totality of the evidence, it is my expert opinion—held to a reasonable degree of professional certainty—that Sergeant Hardin's tactical decisions, foot-pursuit management, weapon-handling, and use of deadly force were inconsistent with generally accepted police-practices standards.

9. The foot pursuit, initiated alone and without tactical necessity, deviated from widely recognized safety principles governing officer-initiated contact and decision-making.

10. The TASER X26P was not capable of causing neuromuscular incapacitation during the encounter because the cartridge had already discharged its probes, none of which penetrated Mr. Brooks's body, and the device was therefore limited to drive-stun mode—which produces only transient pain when pressed firmly to the body.

11. The body-worn camera footage does **not** depict any attempt by Mr. Brooks to apply a drive-stun to Sergeant Hardin.

12. The reenactment conducted by the HCSO training unit—replicating the conditions shown in the body-worn footage—confirmed that incidental wire contact cannot produce incapacitation and results, at most, in a brief pain response.

13. At the moment deadly force was used, Sergeant Hardin maintained a dominant physical position over Mr. Brooks, who remained prone or semi-prone on the ground. Hardin displayed no indicators of motor-function loss, disorientation, or imminent incapacitation.

14. Under these circumstances, a reasonable officer would not have perceived an immediate threat of death or serious bodily injury.

15. I prepared a full written expert report/declaration dated December 14, 2025, which sets forth my opinions and the bases for them. I incorporate that report herein by reference as Exhibit B.

16. If called to testify, I can and will testify to all matters stated in this affidavit and in my expert report.

17. All statements contained in this affidavit are true and correct to the best of my knowledge.

FURTHER AFFIANT SAYETH NOT.

*/s/ Nick Bloomfield*

Nicholas G. Bloomfield

NOTARY ACKNOWLEDGMENT

SUBSCRIBED AND SWORN TO before me on this 15th day of December, 2025, by Nicholas G. Bloomfield, who is personally known to me or who produced NM Drivers License as identification.

Notary Public, State of New Mexico
My commission expires: April 6, 2028

*/s/ Shandra J Smith*

SHANDRA J SMITH
STATE OF NEW MEXICO
NOTARY PUBLIC
COMMISSION # 1080393
EXPIRES APRIL 6, 2028