# Nicholas G. Bloo



## Expert Report

Justin A. Moore

ajEyDajayPjL

YybjPp1bjEFFhfOghhfLDE

### Officers Involved Shooting by Harris County Sheriff Sgt. Garret Hardin

8p6ypLhF    8:EbfLjEPpLORJhyfhFFPALjhfLvPL:E6yDJjHPpAPOLpjPpHPAHSEffPb
4hypjJaHLfPFFbnFFPALaCjUEffLjjSEfOPpLpCECLOPpEFhhjcyfbyPPjHjfhOLfPA&3fhh &b
:HPAHLvLpjbAyDgPpEJpQHPgdSEfOPp7FEjEDDJbHhhjPpCf3fhh&PhfjhJhyfLpCECLGLpj
8cfhvPOLOEphcPpPhphpjHPbgEjjLfjhjHLSEffPb4hypjJ5PbjfPAj2jjhfpLJbnFFPALkhyfhFFPAL
HEbfLwyLbjLOjHEj8fLvPL:jHLAPvPDAhgcDEPpjECEPpfOpGpEpOjHLSEffPb4hypjJaHLfPFFb
nFFPATpEOOPjPhpjhjHLOLFLpOhjhjPhpFhfbyggEfIYyOCLgLpjjHLOLADEfEjPhphFaCj
SEfOPpEpOjHLOLFLpOhjxcLfjPjpLbbEFFPOEvPJDEjPvLjhjHPbgEjjLfHPbfLchfjPbREbLOhp
jHLgEjLfPEDbfLvPDJhOEjLaHhyDOEpJbyRbLwyLpjPpFhfgEjPhpAEybLgLjhLxcEpOEOOhf
fLvPbLEpJhfgJhcPpPhpb8fLbLfvLjHLfPCHjjhfLvPbLEgLpOfifbyccDLgLpjjjHPbflLchfj
EAAhfOPpCDJ

tDLEbLphjLjHEjjHPbfLchfjPpADyOLbAPjEjPhpbjhEpOOPbAybhfhnfhEPpPhpEpOOhAygLpjbjHEj
gEJRLAhpbPOLfLOAhpFPOLpjPEDhfhjHLf:PbLphjhjbyPjERDLFhfcyRDPAfLDLEbL

........................................................................................................................

,LjHhOhDhCJ.............................................................................................................

thDPALqbLhF0hfAL9xcDPAEjPhp........................................................................................

thDPALEAjPAb9xcDPAEjPhp.............................................................................................

nčPpPhpbl.................................................................................................................

rhOLfPA&3fhh&8pAPOLpj

........................................................................................................................

........................................................................................................................

........................................................................................................................

........................................................................................................................

........................................................................................................................

nčPpPhpbhpàCjSEfOPp bčfPhfqbLhF0hfALSPbjhfJ

........................................................................................................................

........................................................................................................................

........................................................................................................................

ajEjLgLpjhF4hgcLpbEjPhp.........................................................................................................☐

ayRgPbbPhp.........................................................................................................................☐

## Methodology

lh⌐Lpbyf⌐L⌐⌐gJ⌐⌐gLjHhOhDhCJ⌐⌐Eb⌐fLDPER⌐⌐⌐hcPpPhpb⌐Pp⌐jHPb⌐gEjjLf⌐EfL⌐cf⌐LOPAEjLO⌐hp⌐E⌐ Ahg⌐cfLHLpbPvLfLlvPL⌐hFjHL⌐fhv⌐POLO⌐gEjLf⌐PED⌐HEj⌐Lbj⌐E⌐⌐DPh⌐H⌐⌐⌐bfbjEpOPpChFjHLFEAjbhF⌐⌐ jHLAEbLEpOhpjHL⌐fhFLbbPhpED⌐EpOCLpL⌐fEDDJEAAL⌐cjLO⌐cfPpAPcDLbEpO⌐fEAjPAL⌐bPpch⌐DPAPpC⌐ jHLOEjLhFjHPPbPpAPOL⌐⌐Lp⌐LfEDDJEAAL⌐cjLO⌐cfPpAP⌐L⌐DL⌐hjjHhbLAhpAL⌐cjbEpOjHLhFPLbjHEj⌐ EfL⌐POLDJ⌐⌐ph⌐pEA⌐⌐ph⌐⌐DOCLO⌐EpO⌐fLDPLO⌐ychp⌐Ppj⌐HL⌐FP⌐DO⌐⌐LfEDDJEAAL⌐cjLO⌐cfEAjPALb⌐ fLFLfbjhjHHbbLcfhjhAhDbjLAHpPwyLbEpOcfhALOyfLbjHEjEfL⌐POLDJ⌐⌐ph⌐pEA⌐⌐ph⌐⌐DOCLOEpO⌐ fLDPLO⌐ychp⌐Ppj⌐HL⌐FPLDO2⌐fPpAPcDLhf⌐cf⌐fEAjPALPb⌐CLpL⌐fEDDJEAAL⌐cjLO⌐⌐⌐Hy⌐EjLl⌐O⌐D⌐D⌐D⌐ jfEPpLO⌐EpO⌐⌐Lxc⌐LfPLpALO⌐cfhFLbbPhpEDb⌐⌐hyDO⌐EC⌐fLL⌐jHEj⌐Pj⌐Pb⌐AhpvLpjPhpED⌐AybjhgEfJl⌐EpO⌐ fLEbhpERDJbjEpOEfO⌐

ULpLfEDDJEAAL⌐cjLO⌐cfPpAPcDLbEpO⌐fEAjPALb⌐pch⌐DPAPpCfLFDLAjjLAHpPAEDEpO⌐b⌐LAPEDPGLO⌐ Ppj⌐HLDE⌐Lp⌐HfALgLpjFPLDO2⌐fPpAP⌐cfhf⌐cfEAjPALAEpRLCLpLfEDDJEAAL⌐cjLO⌐PjHhyjpLALbbEfPDJ⌐ RLPpCypPvLfbLEDDJEOhcjLOhffPbPpCjhjHLDLvLDh⌐⌐FhjPR⌐⌐PbHLODL⌐gc⌐PfPAEDDJvEDPOPOJE⌐LORLbj⌐ cfEAjPALULpLfEDDJEAAL⌐cjLO⌐cfPpAPcDLbEpO⌐fEAjPALb⌐gEJRLRyjEfL⌐phjpLALbbEO⌐⌐⌐fbjLFDLAjjL⌐ 5LcEfjgLpj⌐hF⌐6⌐ybjPAL⌐AhpbLpj⌐OLAfLLb⌐cyRDPAEj⌐Phpb⌐RJ⌐cfhFLbbPhpED⌐EbbhAPEjPhpb⌐byAH⌐EbjHL⌐ 8pjLfpEjPhpED2⌐bbhAPEjPhphF4HPLFbhFthDPALjHLthDPAL9xLAyjPvLfLbLEfAH0hfygjHLiEjPhpED⌐ thDPAL0hypOEjPhpLjAPpECLpAJch⌐DPALbEpOPpfLcy⌐⌐⌐REPppCgEjLfPEDb⌐

lh⌐POLpjPFJEpOEcc⌐DJjHLEcc⌐DPAERDLCLpLfEDDJEAAL⌐cjLO⌐cfPpAPcDLbEpO⌐fEAjPAR⌐⌐⌐DDPpx⌐DPAPpC⌐ ychp⌐pgJ⌐⌐&⌐phi⌐DLOCLb⌐&PDDLxc⌐LfPLpAL⌐jffEPppCEpOLOy⌐AEjPhpPpED⌐Lp⌐FhfALgLpjjHPbPpADyOLb⌐ EAEOLgPAbEO⌐cfhFLbbPhpED⌐Lj⌐⌐hfJ⌐DLvEpjFPLDObhF&⌐phi⌐DL⌐QCL⌐⌐phi⌐DLOCLLhFHPbjhfPAED⌐ EpO⌐AhpjLgchfEfJlDE⌐Lp⌐FhfALgLpjjHPbjEpOEfOb⌐EpO⌐gLjHhObEpO⌐jHLfLDLvEpj⌐cfhFLbbPhpED⌐EpO⌐ EAEOLgPADPjLEjyfLbbhFjHLOEjLhFjHPPbPpAP⌐⌐NRjQDhjEbyPgPDEfgLjHhOhDhCJHlbPAhpOyAj⌐ cfhFLbbPhpED⌐LvEDyEjPphb⌐hF⌐cthDPAL⌐hFFPALb⌐fbhf⌐ECE⌐⌐cAPPAP⌐hhpyDjEEjpjpOjfEPpLf⌐lHL⌐ gLjHhOhDhC8Ecc⌐DPLOPpjHPbAEbLPb⌐AhpbPbjLpj⌐PjH⌐HLgLjHhOhDhCJyjPDPGPORJhjHLfLxc⌐LfjbPp⌐ jHLFPLDOhfFDE⌐LpFhfALgLpjHLpEpEDJGPpCPPpAPOLpjbbEJfEPPbjl⌐

2DPbjhFgEjLfPEDbc⌐fhvPOLOEpOfLv⌐PL⌐LOPbc⌐fhvPOLORLDhfnjHLfgEjLfPEDbc⌐LAPFPAEDDJfLv⌐PL⌐LO⌐ EpOfLDPLO⌐ychpEfLAPjLOEbEcc⌐fcfPEjL⌐

- Documents

  ⌐          ⌐⌐              ⌐⌐
  ⌐                      ⌐

- Media

  ⌐        ⌐⌐    ⌐⌐
  ⌐      ⌐⌐⌐              ⌐⌐⌐  ⌐⌐

Police Use of Excessive Force

[Body text illegible due to font encoding corruption. Legible fragments below.]

… *Graham v.*[1] *Connor* … The *Graham* Court held that the determination … constitutionally reasonable … balancing of the … on the individual's Fourth Amendment interest … at … [2] the …

… National Consensus …

---

[1] 490 U.S. 386 (1989).

[2] *Graham v. Connor*, 490 U.S. 386, 396 (1989) (internal quotation marks omitted).

[3] *Graham v. Connor*, 490 U.S. 386, 396 (1989).

[4] *Graham v. Connor*, 490 U.S. 386, 396-97 (1989).

[5] INTERNATIONAL ASS'N OF CHIEFS OF POLICE, NATIONAL CONSENSUS POLICY & DISCUSSION PAPER ON USE OF FORCE 2 (2017) (quoting *Graham v. Connor*, 490 U.S. 386 (1989)).

Discussion Paper on Use of Force ... enforcement leadership and ... labor organization[6]

... a reasonably prudent officer would use under ... standard is not intended to be an analys[is] ... circumstances of it known at the time the force ...

...[7]

... been aware of at the time, ... discovered after the use of force, is relevan[t] ... reasonable officer's perceptions and conclusions prio[r]...[8]

## Police Expectation

---

[6] ... PAPER ON USE OF FORCE 5 (2017).

[7] *Id*. at 8 (emphasis in original) (internal quotation marks omitted).

[8] ... reaching for a weapon in their waistband will tend to be corroborated if it is later determined that the subject had a weapon in their waistband. In ... waistband may be undermined if it is later determined that the subject did not have anything in their waistband at the time. Critically, the later findings are not dipositive: a subject might reach for their waistband even without a weapon there, and a subject who does have a weapon in their waistband might not reach for it. Nevertheless, in this narrow context, information that would not have been available to the reasonable officer at the time can be relevant to the ... perspective and conclusions.

[9] [illegible]

[illegible]

versa. Context is key, with [illegible] the situation. For a [illegible] differently. Tactically, it follows that thos[illegible] their approach with their perception of the s[illegible] the [illegible] available at the [illegible] justified under the circumstances by the pote[illegible]

[illegible]

[illegible]

[9] Jeffrey J. Noble & Geoffrey P. Alpert, *State-Created Danger* in CRITICAL ISSUES IN POLICING: CONTEMPORARY READINGS at 568 (Roger Dunham and Geoffrey P. Alpert, eds., 7th ed., 2015).

[10] SETH W. STOUGHTON ET AL., EVALUATING POLICE USES OF FORCE 155 (2020).

[11] International Association of Chiefs of Police, *Motor Vehicle Stops* 5, May 2018.

[12] SETH W. STOUGHTON ET AL., EVALUATING POLICE USES OF FORCE 159 (2020).

[13] SETH W. STOUGHTON, ET AL., EVALUATING POLICE USES OF FORCE 159 (2020).

[14] SETH W. STOUGHTON, ET AL., EVALUATING POLICE USES OF FORCE 172-73 (2020).

[15] [illegible] [16] [illegible] avoid, to the extent possible, putting offi[illegible] split-second decisions.

[illegible]

[illegible] in justifies [illegible] threats that would have [illegible] avoided [17] [illegible]

[illegible]

[illegible] subject's physical safety. The officer's [illegible] expose them to an otherwise avoidable threat, [illegible] force to address threats that [illegible] [18]

[illegible]

[illegible] [19]

---

[15] Brandon Garrett & Seth Stoughton, *A Tactical Fourth Amendment*, 103 Va. L. Rev. 211, 253 (2017).

[16] Brandon Garrett & Seth Stoughton, *A Tactical Fourth Amendment*, 103 Va. L. Rev. 211, 259 (2017).

[17] [illegible] State-Created Danger: Should Police Of[illegible] Reckless Tactical Decisions[illegible], in CRITICAL ISSUES IN POLICING: CONTEMPORARY READINGS [illegible] (Roger G. Dunham & Geoffrey P. Alpert eds., 6th ed. 2010).

[18] SETH W. STOUGHTON ET AL., EVALUATING POLICE USES OF FORCE 155 (2020).

[19] SETH W. STOUGHTON ET AL., EVALUATING POLICE USES OF FORCE 158 (2020).

## Opinions

[text illegible due to font encoding]

My use of terms ... supra ... disproportionate, intended to and should be ... generally accepted standards ... references to or the application of legal ... judge.

1. Sgt. Harder's decision to pursue a fleeing Mr. Brooks an already reasonable and consistent with praestic



2. Sgt. Harder's deployment of his Taser on Mr. Brooks was reas with generally accepted police practices.

lHPbAEbLPpvhDvLbjHLEccDPAEjPhphFEl2a9rlHLl2a9rPbE4hpOyAjLO9DLAjfPAEDoLEchp[20] jHEjAEpRLOPbAHEfCLOPpLPjHLfbjEpOEfOCfhRLghOLhfPpPpOy6jbhOL8pbjEpOEfOghOL jHLl2a9rFPfLbjihREfRLOcfhpCbjHEjEfLOLbPCpLOjhELpLjfEjLjHLbyRYb EXcPpbhjHEjEp LDLAjfPAED AHEfCLAEpiRLEOgPpPbjLfLO HLLDLAjfPAPjEAEs9LfLFLfbjjh Eb iLyfhgybAyDEf8pAEcEAPjEjPhjHLciyDbPpCLDLAjfPAPjJOPbfycjbjHLpLfvhybbJbjLgAEybPpC cEPpFyDEpOPpvhDypjEfJgybADLAhpjfEAjPhpbRLj:LLpjHLjihcffhK CB AhpjfEAjPhphFgyDjPcDL gybADLbEAfhbbEbyRYb AhjOAEpiFFLAjDJfLpOLfjiHLgypERDLjihbyAALbbFyDDJPgcDLgLpj Cfhbbgihjhfb&PDDbILC&LLcPpCjHLPfREDEpALiifFPpLghjhfb&PDDbILCDPFjPpChifchPpjPpC bhgLjHPpC

2vEfPLjJhFFEAjhfbAEpfLOyAyLjHLDP&LDPHhhOjHEjEl2a9rPDDEypAjPhpEbPpjLpOLOOhR2a9r jhEAHPLvLpLyfhgybAyDEfPpAEcEAPjEjPhpPpEtEJjHEjbPCpFFPAEpjDJPpAEcEAPjEjPjEjLbEbyRYLAjjHL gybjRLEAhgcDLjLOLDLAjfPAEDAPfAyPjLPjHLfbitPjHjjHLj:hcfhRLbhftPjHEjDLEbjhpLcfhRLEpO jHLRhOJhFjHLLOLvPALPjbLDFEpOjHEjAPfAyPjgy9jRLD phyCHjHLpLPahgcEbbgyDjPcDLgybADLb lHLbgEDDLfjHLAPfAyPjjHLghfLDPgPjLOjHLLFFLAjhFjHLl2a9rOPbAHEfCL8pvLfbLDJjHLDEfCLf jHLAPfAyPjjHLghfLLxjLpbPvLjHLLFFLAjhFjHLl2a9rOPbAHEfCL

lHPbAhpALcjPbLEpiPgchfjEpj AhgchpLpjihFrichDPALjfEPpPpCRLAEybLjHLl2a9rcfhRLbEfL cHJbPAEDDJADhbLjihCLjHLfPpjHLtEchpAEfjfPOCLbRyjjHLJEfLchbPjPhpLOPpbLOOPJPhpLOPPbE bcfLEOEcEfjhpEcfLOPAjERDLjfEYLAjhfJEFjLfRLPpCFPfLOl2a9rj CPjbhjPEDbPOLpjPFJEbE fyDLhFjHygRLEpLbjPgEjLjHEjjHLcfhRLbFPfLOFfhgALfjEPpAEfjfPOCLbjPDDbc RLEORij

[20] 9xEAjjfLfgPphDhCJvEfPLbRyjAEpPpADyOL9DLAjfPADoLEchp9DLAjfPA4hpjfhD5LvPAL9DLAjfhbHhA& oLEchp4hpOyAjLO9pLFCJ6LEchpbLjA

[21] lHPbHEbEDbhRLLpfLFLffLOjhEb9DLAjfhiybAyDEf5Pbfycj Php

[22] TASER 7 Manual.pdf.

[23]ꞏꞏLvPhybPjLfEjPhpbhFꞏa9rꞏffEPpPpCgEjLfPEDbꞏ
byCCLbjEfyDLhFjHygRꞏjHEjꞏHLꞏa9rꞏfhRLbꞏfPDDbꞏfLEOꞏhpLEfhhjFhfLvLfJbLvLpFLLjꞏ
hFjꞏEvLDꞏ12DjHhyCHꞏa9rbꞏ can be deployed as close as point b previously r  p  o  h  p  to %  a  e  s.

Analysis of actual field use data submitted to TASER indicates this range of 7 to 15 feet appears to be the best overall compromise between these factors as it allows the officer to remain outside the reactionary gap, provides the distance needed to achieve adequate probe spread that typically allows for NMI to occur and keeps the officer close enough to allow for the probes to be accurate during deployment.[26]

oHLpEꞏa9rPbOPbAHEfCLOEjEbyRYLAjꞏPjHPpbLvLpFLLjjHLꞏꞏDPgPjLOꞏfhRLbꞏfLEGꞏLEpbꞏ
jHLfLPꞏEꞏꞏDhꞏEghypjhFgybADLgEbbEFFLAjLOꞏꞏꞏꞏHPbꞏPpjyfpꞏAfLEjLbEꞏꞏDhꞏfhRERPDPjhFꞏ
pLyfhgybAyDEfPpAEcEAPjEjPꞏꞏa9rꞏEjLfPEDbbjEjLꞏꞏuLfJADhbLOLcDhJgLpjbAhyDOfLbyDjPpꞏ
PpAfLEbLOEAAyfEAJRyjHEvLDLbbfLEAjPhpEfJOPbjEpALEpObgEDꞏꞏꞏꞏꞏꞏꞏꞏꞏꞏꞏꞏꞏAhyDORLꞏ
DLbbLFFLAjPꞏꞏꞏhfLfLfLALpjjffEPpPpCgEjLfPEDbꞏgꞏHEbPGLbjHEjꞏOLcDhJgLpjꞏꞏjHPpFLLjHEvLDꞏ
ꞏSPCHꞏHPjꞏfhRERPDPjꞏꞏꞏqꞏDPgPjLOꞏfhRLbꞏfLEꞏꞏPAHꞏPbꞏDPꞏꞏLDJjꞏfLOyALjꞏHLꞏDPꞏꞏLDPHhhOꞏhFꞏ
pLyfhgybAyDEfPpAEcEAPjEjPꞏꞏꞏꞏDhbLꞏfhRLbꞏfLEOꞏPbꞏhpLꞏhFjꞏHLꞏDPꞏꞏLDPbjLꞏꞏꞏEybLpbhFꞏꞏPgPjLOꞏ
9FFLAjPvLpLꞏꞏꞏhꞏꞏꞏADhbLfEpCLOLcDhJgLpjbꞏꞏa9rꞏEjLfPEDbbjEjLꞏꞏꞏgꞏPpPgygꞏꞏꞏꞏPpAHꞏfhRLꞏꞏ
bꞏfLEOPbhcjPgEꞏꞏꞏjHEAHPLvLpLpLyfhgybAyDEfPpAEcEAPjEjPꞏꞏꞏ

8pjHPbꞏEfjPAyDEfAEbLAꞏjSEfOPpLDLAꞏODꞏjfHꞏꞏa9rꞏꞏꞏEbLffmꞏAhpOyAjLOLDLAjfPAEDꞏꞏ
LEchpaLfPEDꞏmꞏSꞏꞏꞏꞏcpfLbchpbLjhꞏꞏfhhꞏꞏꞏbEAjPvLFDPCHjEpOjHfLEjhFLbAEcLLHLꞏꞏ
pEjyfLEpObLvLfPjjhFjHLꞏPꞏꞏꞏPgLꞏꞏfhhꞏꞏbHEOEDDLCLODJAhggPjjLOꞏAhycDLOꞏPjHHPbꞏꞏꞏfhhꞏꞏb7ꞏꞏ
EAjPvLFDPCHjEfhgaꞏSꞏfOPpꞏEbcfhchfjPhpEDjhaꞏCjꞏSEfOPpꞏOLAPPbhpjLEcCDHPbꞏꞏa9rPpꞏ
cfhRLꞏghOLEbEfLEbhpERDLꞏhcjPhpjhhvLfAhgLꞏfhhꞏbEAjPvLfLbPbjEpALAꞏꞏꞏEccLEfbLfhgꞏ
jHLLvPOLpALjHEjhpDJhpLfjbꞏRLꞏꞏꞏAhpjEAjLOꞏꞏfhhꞏbꞏcfhhpfLbyDyDjJpcPpCpLyfhgybAyDEfꞏ
PpAEcEAPjEjPhpEpOOPpjHPbPpbPEpEpAꞏꞏꞏꞏEbLvLpOLpALpꞏALORꞏfꞏꞏꞏfhhꞏbꞏbꞏHJbPAEDRꞏꞏꞏꞏꞏꞏꞏꞏꞏꞏꞏ
PpAhpbPbjLpjꞏPjHjHLEAHPLvLpLpLgꞏꞏjꞏAcEAPjEjPꞏPhp

ꞏHꞏPbꞏacEAL8pjLpjPhpEDDJꞏLFjꞏ3DEpꞏ

[23] Axon Part 1.pdf, p. 63.
[24] TASER Training Version 19, Slide 97. This spread pattern is for cartridges with a maximum effective distance of 15, 21, and 25 feet. Probes fired from cartridges with a 35-foot maximum effective distance have a slightly different spread pattern. TASER Training Version 19, Slide 100.
[25] TASER Training Version 19, Slide 149.
[26] TASER Training Version 19, Slide 149.
[27] TASER Training Version 19, Slide 150.
[28] TASER Training Version 19, Slide 151.
[29] TASER Training Version 19, Slide 149.
[30] AXON Part 4.pdf, p. 13.
[31] AXON Part 4.pdf, p. 22.
[32] AXON Part 4.pdf, p. 13.

Hardin-WBrodyCame(0a10130.bmp)
(Imageoomed and Cropped | No Adj



Hardin-WBrodyCamera
(Images Cropped | No Adjust



3. Sgt. Harris improvised tackle of Mr. Brooks fol... was tactically unsound, however the force of escape.

[Body text illegible due to encoding corruption]

[33] INTERNATIONAL ASS'N OF CHIEFS OF POLICE, CONSIDERATIONS, FOOT PURSUITS (July 2019).

[34] INTERNATIONAL ASS'N OF CHIEFS OF POLICE, CONCEPTS AND ISSUES, FOOT PURSUITS (July 2019).

[35] INTERNATIONAL ASS'N OF CHIEFS OF POLICE, CONCEPTS AND ISSUES, FOOT PURSUITS (July 2019).

[36] INTERNATIONAL ASS'N OF CHIEFS OF POLICE, CONCEPTS AND ISSUES, FOOT PURSUITS (July 2019).

[37] Brian McAllister, *Foot Pursuits: Keeping Officers Safe*, FBI Law Enforcement Bulletin Spotlights (July 28, 2015).

[38] Jeffrey J. Noble & Geoffrey P. Alpert, *State-Created Danger* in CRITICAL ISSUES IN POLICING: CONTEMPORARY READINGS at 568 (Roger Dunham and Geoffrey P. Alpert, eds., 7th ed., 2015).

[39] SETH W. STOUGHTON ET AL., EVALUATING POLICE USES OF FORCE 155 (2020).

8jᵖPbᵗLDD&phᵗpEpOCLpLfEDDJᴱAALcjᴸOPpᶜhᴰPAPpCjᴴEjhFFPALᶠbAᴱpybLjᴴ&ᴴjᵖᴼhᵗpb jᴸAᴴpPwyLbjᴴEjhFFPALᶠbybLjhEhfALEbyᴿYLAjjhjᴴLᶜᶠhypOᵒ

IE&LOhᵗpbᴬEpᴿRLᴱEpᴸLFFLAjᴾvLᵗEJᴱFhfᴱEpᴴhFFPALᶠjhᴸbjᴱRDPbHᴱᴼhgPpEpjᴵhfᵒ jEAjPAEDDJEOvEpjᴱᴼhᴿᴮjᴾhpvᴾbᵗvPbjᴴLbyᴿYLAjIE&LOhᵗpbjᴶcPAEDDJfLwyPfLᵒ jᴴLhfFFALᶠjhᴼPbfycjjᴴLbyᴿ5ᴿᴬᴶᴰEpᴬLᴿJᴿfPpCᵒPpCjᴴLbyᴿ55ᴴAᵞᴰOLfbhyjᵒ hFEDPCpgLpjᵗPjᴴjᴴLᴾfᴴPbjᴴLpjᴴjᴱLEOvEpjᴱCLhFjᴴLᴼPbfycjPhpPpjᴴLbyᴿYLAjᵒ REDEpALjhᴿfPpCjᴴᴶ|ᴴjᴴLᶜᶠhypOᴵᴴLfᴸEfᴸEᵗPOLᵛEfPLjJhFjᴱ&LOhᵗpbjᴴEjᵒ OfEᵗEfhgEᴱEpCLhFgᴱEfjPEDEfjbdᵛ

◻

3LFhfᴸᵛybPpCᴱᶜEfjᴾAyDEfjᴱ&LOhᵗphᴴFFPALᶠbᵗgybjᴬhpbPOLfjᴴLᴸpvPfhpgLpjᴱPpᵒ :HPAᴴjᴴLᴸpAhypjLfᴾbjᴱ&PpCᵗDEALᴱbᵗLDDᴱbjᴴLbyᴿᴿᴹᴴᴬᴬEDᴱpgᴼpjED bjEjLfᴸLDLᵛEpjᴸpvPfhpgLpjEDFEAjhfbPpᴬDyOLjᴴLbyᴿFEALhpᵗHPAᴴjᴴLbyᴿYLAjᵗPDD DEpOEpOEpJhᴿbjEADLbjᴴEjjᴴLbyᴿYLAjjjEJHPjᴼyfPpCjᴴLAhyfbLhFjᴴLjE&LOhᵗpᵒ 2ᵗjE&LOhᵗphpᵗEbcHEDjᴵhfᴸALgLpjᵗgEJᴿRLᴱEfghfLᵗOEpCLfhybjᴴEpjᴵhLᵗbEgLᵒ jE&LOhᵗphpᵖCfEbbhfᴬEfcLjᴸFhfLxEgcDLᴱpOᴱjE&LOhᵗpjᴴEjᴵLwyPfLbEDEfCLᵒ APfᴬyDEfghvLgLpjᵗgEJᴿRLᴱPpEcchfPᵗjᴱPpjᴴLᴰPgPjLOᴱAhpFPpLbhFᴱpᵗEfhᵗ HEDDᵗEJᴵhfᴱHhDOPpCᴱALDDᴵᴴLᵗbyᴿᴿᴹᴬᴬPAEDᴱEpOᵗgLpjEDᵗbjEjLᴸEfLᴸfLDLᵛEpjᵒ AhpbPOLfEjᴵphpbRLAEybLjᴱ&LᴼhᵗpbᵗfEDDJOLcLpOhpjᴴLbyᴿYLAjᴬhgcLpbEjPpCᵒ jhbhgLLxjLpjᴸFhfjᴴLghjᴾhp2ᴾPpjhxᴾAEjLObyᴿYLAjᵗᴴhDEAᴱbjᴶᴴLᴱcfLpᴬLALhFᵒ gPpOjhᴵcᵞjjᴴLᴾfᴴEpOycᵗᴴLpᴴLᴾbjᴾhpᵗpjᴴLᶜᶠhypOᴼFhfLxEgcDLᴾbfᴱFfghfLᵒ DP&LDDJjᴴbjfP&LjᴴᴾfᴴᴸEᴼhᵗfᴱALhpjᴴᴼᴼᵗEpbPbEhbᴿLᴸfᴱyᴿYLAjᴴjᴳ|PgPDEFDJEᵒ cᴴJbᴾAEDDJfᴱPDbᵗbyᴿYLAjᴬgEJᴿᴿLypᴱEDRLjᴴᴿfLfᴸ&jᴴLPfᴴFEDDᴴfgEJᴿRLᴾPPyfLOᴾPpjᴴLᵒ EjjᴸgᴱcjᴴᴼhbbᴱpObgEDDLᴾbyᴿYLAjᴴjbgEJᴿᴿLᵛyDpLfᴱRDLjᴾhPpvyfᴾbjᴾbjᴴᴱjᴶᴬEᴱPfLᴸbyᴿDjᵒ FfhgᴴFFPALᶠbᴼPpjLpjᴾhpEDDJEDDDPpCᶠᴴyᴳᴿᶜᴴLAᴸbᴼyfPpCᶜEjᴱ&LOhᵗp

8pjᴴPbAᴱbᴱFhᴰDDhᵗPpCjᴴLFEPDOLOL2a9rᴼLcᴰhJgLpjEpOᵗᴮfhh&bᴬhpjᴾPpyLOFᴰPᴼᶜᴴjᴬᴵCjᴱSᴱfOPpᵒ AhpjᴾPpyLOjhᵗcᵞfbyLᵗf3ᴮfhh&bᴱPpOᵞbLOᴼᴱᴱpᴾPgcfhvPbLOᴼᵗjᴴEjᴱPbphpᴵjᴶᴸAᴴpPAᴱᴰᴰᴼhvLgLpjjh LFFLAjᴾPvLᴰDJᴱEA&ᴰ3ᴱhhᴿᴿᴿRfᴼPpCᵖᴬᴴPgjᴴjᴴLᶜᶠhypOᴼᴵ2DjᴴhyᴬᴴJᴴᴾPbᴸᴱbᴼᶠhᴱᴴfᴾjᴾPhpEᴼDjhᴾᴵfᵒ 3fhh&bᴰᴼLghpbjᴾEjLᴼLᴱAjᴾPvLᵗfLbPbjEpALᴱᴸAjᴱSᴱfᴼᴼᴾᴸAᴾbPhpjhᴿᴱᴬᴴJbᴾAEDDJᴰLpCᴱECLᴱᵗPjHᵗᴵfᴸ 3fhh&bᴴᴮᴰᴱᴬLDEALᴼᴴᴼPggPpEOᴱOPbᴼᴼEOvEpjᴱCLhybᴱbhbPjᴾhpᵗOvᴱLpjᴴᴸᴱEjjᴶᴱEjᴱ|ᴴLᴸᵗEbᴼᴰhpLᴸpᴼhphpLᴱbᴸfᴱHᴴPbᵒ HEpObᴿᴸEbbjᴴᴼᴰDDᴴᴴᴬᴬAyᴬᴰPLOᴿ:PjᴴᴴᴴPbᴸᴱ2a9rᴿᴴᴴPAᴴᴸᴿhyᴰDOᵗfᴸLbhpERDJᴴᴿPjᴱLfLfLᴱ:PjᴴjᴴᴸᴸᴼFALᴱᴼjᴼvLᵒ LgcᴼhJgLpjᴾhFᴸ|gᴿcjᴶᴸ|ᴴEpOᵒgᴸLbyfᴼbjhᴴᴴᴼLFFLAᴾjᴼ|OᴰᴾLjᴾpᵗPhpᴸᴴfᴼEfᴼfᴸLbhpbᵗaᴬjᵒ SᴱfOPpᵗpᵗbᴼcᴴgᴼᴱAᴸᴼfᴴvᴾPbᴰLᴼ|ᴱEᴱ&Dᴼhᴿfᵗᵗfᴱᴿᶠᴿ3ᴱfhh&bᴱᴴhᴰDDhᵗᵗPpCᴼEFFᴼEᴼDLOᴰ2a9rᴼOLᴸcᴼDhᴵJgLpjᴴᴱᴿᴾbjᴱEAjᴱPAᴱᴱᴰᴰᴰJᵒ ypbhᵗhᵞpOᴵᴴᴴᴸᴵLᵛLfᵗjᴴᴸLᴱfhfᴿfALEᴼᴬᴬᴱOPᴱᴬAEjᴱᴾᴴpᴾᴸᴱᴸᴿᴿᶠhᴱᴱfᴿfᴴᴱfᴵᴼᴱᴼᴼᴰpjᴿᴼᴱᴴjᴴᴴᴴᴰLjᴴhᴰ'ᵗ|ᴼᵞᴼᴬᴬᴰᴬᴱᴬᴰEᴿᴱᴱᴿᴿᴰLᴱᴿᴼᴸᴼ

◻|ᴴᴴPbᴱ◻cᵗᴱᴱALᴸ8pjᴸLpjᴴ|ᴴpᴱᴿEDDJᴸ|ᴵ|Lfj3DEp&

---

40 Sᴇᴛʜ W. Sᴛᴏᴜɢʜᴛᴏɴ ᴇᴛ ᴀʟ., Eᴠᴀʟᴜᴀᴛɪɴɢ Pᴏʟɪᴄᴇ Uꜱᴇꜱ ᴏꜰ Fᴏʀᴄᴇ 201 (2020).

41 Sᴇᴛʜ W. Sᴛᴏᴜɢʜᴛᴏɴ ᴇᴛ ᴀʟ., Eᴠᴀʟᴜᴀᴛɪɴɢ Pᴏʟɪᴄᴇ Uꜱᴇꜱ ᴏꜰ Fᴏʀᴄᴇ 201-02 (2020).

4. Sgt ardsin abandonment of his TASER device on Brooks sasp was unreasonable, tactically un accepted police practices.

[The following body paragraphs are rendered in a corrupted font encoding and are not legibly reproducible.]

[42] ... Created Danger: Should Police Of Reckless Tactica... Police Misconduct ... IMPORTANT ... (Roger G. Dunham / Geoffrey P. Alpert eds., 7th ed. 2015).

[43] ... "Reckless Tactica... Police Misconduct ... IMPORTANT ... (Roger G. Dunham / Geoffrey P. Alpert eds., 7th ed. 2015).

[44] SETH W. STOUGHTON ET AL., Evaluating Police Uses of Force 205-06 (2020).

[45] BERNARD D. ROSTKER, ET AL., EVALUATION OF THE NEW YORK CITY POLICE DEPARTMENT FIREARM TRAINING AND FIREARM-DISCHARGE REVIEW PROCESS (2008).



Hardin-Worley Body Camera
(Image Cropped | No Adjustment)

5. Sgt. Hardin's use of deadly force was unreasona[...]
generally accepted police practices.

2bOLbAfPRLOPphLthDPALqbLhF0hfAL9xcDPAEjPhpepe. (Ł section of the [...] knokn and generally accepted in policing that of the [...] the the an prohibits a take a ok ang denen a act eim pol ditchi fandorce opti ti on at a y subst la in tei loi al ther body s in ju ri cy te ga o s di ae ed ly for ce.

thDPAPpCHEbEAALcjLOjHLaycfLgL4byPhjPAyDEjPhphF:HLpiOLEODJFhfALPbicLfgPbbPRDL[...] hFFPALfbAEpybLOLEODJFhfALhpDJiHLpjHLJHEvLcfhRERDJHRLEMLvLjHEjEpPpOPvPOyED[...] cfLbLpjEpPggPpLpjjHfLEjhFOLEjHfCfLERhOPDHEfgjhjHLhFFPAfHfhjHLfbi[46]2bOLbAfPRLO[...] PpjHLqbLhF0hfAL9xcDPAEjPhpepe. (Ł, se a o ti i no di vi du al presents a reasona bl hya va ep te ha er it not ent, opportunity, and abi[...]

8jPbiLDD&phipjHEjEl2a9rjHEjPbphjPpEcfhRLghOLAhpOPjPhpAEpphjLFFLAjPvLDJAEybL[...] pLyfhgybAyDEfPpAEcEAPjEjPhpEpOAEphpDJRLybLOEbEcEPpAhgcDPEpALglHbyjfbP[...] &phipEbi5fPvLajypighOL2mnijHLgEpyFEAjyfLfhFl2a9rphjLbjHEj[...]

[46] *Tennessee v. Garner*, 471 U.S. 1 (1985).

[47] AXON. TASER X26P / Operation: Drive-stun backup. Sep. 1, 2023. https://my.axon.com/s/article/Drive-stun-backup-x26p?language=en_US.

49

2bːOLbAfPRLOEːRhvːLjːHLLːFFLAjbhːFjːHLLː2a9rːLxcːLfːPLpːALOOːyfPpCjːHLjJPːPjbːHLjTjːHLPpːAPOLpjː
:EbːAhpbPbjːLpjːPjːHjːHLcEPpːCːLpːLfEjːLOFːhgːBfːPvLːajypːːEpOphjːAhpbPbjːLpjːPjːHPpːAEcEAPjːEjPhpː
0yfjːHLfjːHLDPCHjDJPpbyDEjːLOːːPfːLbOPOphjːcfhOyːALEpJFLDjːLːFFLAjbː



8pjːHPbAEbːLjːHLEvːEPDERDLLːvːPOLpALLbjːERDPbHLbjHːEjEfLːEbhpARːCJ8ːfːKCːHPpAːBːfhpːPjPhpː
:hyːDOHEvLː&phːpjːHEjːHP2a9rːAEfjfːPOCLːːHPAHHhjDːfhLcfhRLbjːHEjːAEpchjLpjːPEDDJAEybLː
pLyfhgybAyːDEfPpAEcEAPjEjPhpːORLLpOPbAHEfCLOcfːPhfjh3fhhh&bhːRjEPpPpCːAhpjfhDhFjHLː
l2a9rːqpOLfbyAHːAPfAygbjEpALbjHLːl2a9rːbPgcDJːAhyːDOːphjːRLːybLOːjhːPpAEcEAPjEjːaCjː
SEfOPpːihfLEbhpERDLhFFPALEːRjːSEfOPpːbːhbPjPhpːAhyːDOHEvLːAhpːADyOLOːjfBFjhːebː
EAjPhpbːcfLbLpjLOEpPggPpLpjjHfLEjjAKjːSEfOPpːhyDORːLpaAEcEAPjEjLOhːfhjːHLfːPbLfLpːOLfLOː
ypːERDLjhcfhjLAjHPgbLDFːHPAHgLEpbjHEjphfLEbhpERDLhFFPOAHFAhAyːAhpADyOLOjHEjjHLfLː
:EbːEpːPggPpLpjjHfLEjhFCfLEjRhOPDJHEːBpYyfJːhfOLEjːH0hfjHLbLfLEbhpbaCjːSEfOPpːbybLː
hFOLEODJFhfALːEbypfLEbhpERDLːxALbbPvLEpOAhpjfEfJjhCLpLfEDDJEAALcjLOchDPALcfEAjPALbː

ːIHPbaːcEAL8pjLpjPhpEDjIHDEjː3DEp&

49 ːSEffPb4ːhypjːJaHLfPFfhnFFPAL8pAPOLpjtːEA&Ljːːː

1. Sg Hlar  ds in July 1, 2022, application experience W
   a mental health crisis and in a heaigh hit negned
   was immedipartesly nt, was excessive, unreasonab
   accepted police practices.

8jPbLDD&phipEpOCLpLfEDDJEAALcjLOPpchDPAPpCjHEjhFFPALfbHEvLjHLEyjHhfPjJjhEccDJFhfAL□
PpjHLDE:FyDOPbAHEfCLhFjHLPfonjpHfdPhpEjLjhEvPERDLjHfLEjhFEpPpOPvPOyEDypOLfgPpPpC□
EDLCPjPgEjLDE:LpFhfALgLpjhRYLAjbhDhpCEbjHLFhfALEccDPAEjPhpPbcfhchfjPhpEjLjhjHL□
OLghpbjfEjPhphFfLbPbjEpALhfECCfLbbPhpjhiEfObjHLhFFPALfdb7hfhjHLfbbPjHfLCEfOjh49o□
EccDPAEjPhpPjPbiLDDLbjERDPbHLOjHEjhFFPALfbEfLjhEvhPOEccDJPpC49obECEPpbjPpOPvPOyEDbiHh□
EfLPpEchbPjPhp:HLfLjHLAEybEjPhphbjLyfhjgybAyDEfPpAEcEAPjEjPhpjAhpYypAjPhp:PjH□
LpvPfhpgLpjEDhfbPjyEjPhpEDFEAjhfbHuyDOcDEALjHEjPpOEPyPPbX&FDPLEbhpERDJbybjEPpPpC□
FyfjHLfHEfgFfhgjHL49oEccDPAEjPhpILSEffPb4hypjJaHLfPFFbhFFPALchDPAJPbAhpbPbjLpj□
PpOLbAfPRPpCjHLbLAPfAygbjEpALDEhfEjLOhfypbjERDLbyfFEALbbyAHFbEjfLLfhhFDEOOLfl□
DLOCLREDAhpJchfAHRGPRPObjEPfhfhbhgLhpLfHh  AhyDOFEDDEpObyFFLfbLfPhybPpYyfJjhjHL□
HLEOhfhjHLfEfLf50□

0yfjHLfPpbPjyEjPhpbPpvhDvPpCPpOPvPOyEDbLxcLfPLpApCFgLpjEDHLEDjHAfPbPbhFFPALfbEfLLxcL□
jhiyb Lcf PpAPcDLbhFjPgLOPbjEpAL AhvEpO OLLbAEDEjPhp4hppbPOLfljHL FhDDhiPpC□
fLAhggLpOEjPhpbFfhgjHLtkDPAL9xLAyjPvLfLLbLEfAH0hfygt9r0fLCEfOPpCCOLbAEDEjPhp□

5LLbAEDEjPhpbHhyDORLEAhfLjHLgLhFEpECDjiffPpPpCfEg2CLpAPLb□
bHhyDOjfEPpjHLPfhFFPALfbhpEAhgcfLHLpbPvLgdkOLLbAEDEjPhpbjfEjLCPLb□
EpOjEAjPAbOLbPCpLOjhOLFybLjLpbLLpAhypjJLbwSEDEjPhpAEpRLjLOPpE□
fEpCLhFbPjyEjPhpbLbcLAPEDDJiHLpAhpfFhpjPpCDyRYLAjbiHhEfLLAhgREjPvLEpOhf□
byFFLfPpCE AfPbPbRLAEybLhFgLpjED PDDpLbbibyRbjEpAKLLRYhEgLpjED□
OPbERPDPjPLbiifHjHLfAhpOjPPhpbjHEjAEpAEybLjHLgjhRLHEvLffLjPAEDDJEpO□
OEpCLfhybDJ5ILbAEDEjPhpbjfEjLCPLbbHhyDORLREbLOhpjHLFhDDhiPpC&LJ□
cfPpAPcDLb□

9FFLAjPvLAhggypPAEjPhpPbLphyCHjhflbhDvLgEpJbPjyEjPhpbAhggypPAEbE□
bHhyDORLjHLPfbjhicjPhpEpOhFFPALfbbHhyDOgEPpjEPpAhggypPAEjPhpjHfhyCHhyj□
EpJLpAhypjLfl□

oHLpLvLfchbbPRDLhFFPALfbbHhyDORLjffEPpLOjhybLOPbjEpALEpOikWlfjh□
jHLbPjyEjPhpOhipiEpEOAfLEjLghfLjPgLEfhfjHLgjhAhpjPpyLAhggypPAEjPpCEpO□
OLvLDhcPpChcjPhpb□

50 Demetria Brooks et al., Plaintiff's Second Amended Complaint, Demetr
and Independent Administrator of the Estate of Roderick Brooks v. Harris County, et al., United States District
Court for the Southern District of Texas, Case No. 4:22-cv-03322, filed March 14, 2025.

51



### 2. Sgt. Hardin's 2021 shooting of Justin Norman presented excessive force application.

### 3. Sgt. Hardin demonstrated a history of force application that was excessive, and inconsistent with generally accepted...

---

[51] th DPAL9xLAyjPvLrfLbLEfAH0hfygt9r0UyPOPpCtffPpAPcDLbhpqbLhF0hfAL4fPjPAED8bbyLbPpthDPAPpCaLfPLb (2016).

[52] Demetria Brooks et al., *Plaintiff's Second Amended Complaint, Demetria Brooks, Individually and as Next of Kin and Independent Administrator of the Estate of Roderick Brooks v. Harris County, et al.*, United States District Court for the Southern District of Texas, Case No. 4:22-cv-03322, filed March 14, 2025.

[53] Demetria Brooks et al., *Plaintiff's Second Amended Complaint, Demetria Brooks, Individually and as Next of Kin and Independent Administrator of the Estate of Roderick Brooks v. Harris County, et al.*, United States District Court for the Southern District of Texas, Case No. 4:22-cv-03322, filed March 14, 2025.

[54] *Tennessee v. Garner*, 471 U.S. 1 (1985).

[55] nFFPALfSEfOPp
bHhhjPpChF 6EbhpjhfgEp       6yDJ bj EbLfPpAPOLpEppOHPb6yDJ PpAPOLpjPpvhDvPpCjHL
bHhhjPpChF ff3fhh&bOLghpbjfEjLbPCpPFPAEpjAhpALfpbj PEDEjhEccfhcfPEjLEccDPAEjPhpbhF
FhfALEbOPAjEjLORUCLpLfEDDJEAALcjLOchDPALcfEAjPALbhFFPALfSEfOPpOLghpbjPpChjPpChF
cEjjLfphF AhpOyAj HPAH vPhDEjLbccfPpAPcDLbhF bhypO jEAjPAED OLAPbPhjgEAEPHgRhp
jEAjPAbEpOLxALbbPvLEfAhjEDPjJhFnFFPALfSEfOPpbbLhFFhfALHPbjhFPbAhpALfpPpCEpO
DLEObjjhwyLbjPhpbfLCEfOPpCjHLSEffPb 4hypjJ aHbffMfPALbfLvPL hF SEfOPpbbEhfAL
EccDPAEjPhpbEpOHLjHLfEccfhcfPEjLAhffLAjPvLEpOfLgLOPEDEjPhpbhhAAyffLO

4. It ge is erally accepted police practice for po
system in place which cso,nsiittsermoaf uisnveosfti
corrective actions (e.g. disciplinaei,lurremed
of the Harriss COofunitcye Sthoeraipfply these princi
Sgt. Hardin accountable for questionable c
and reasonably protect the public ceworuolmd a pr
be contrary to generally accepted police p





lHLqasfLcEfjgLpjhF6ybjPAL 5n6HEbAAhpbPbjLpjDJflLwyPfLOchDPALOLcEfjgLpjbjhPgcDLgLpj
fhRybjyybLhFFhfALfLPL bJbjLgbPpjLfpED PpvLbjPCEjPhpbEpO AhffLAjPvLEAjPhpbfjhF
AhpbLpjOLAfLLbEOOfLbbbPpcCcEjjLfpbhFAhpbjPjyjPhpEDvPhLDjEjPphbjhLybLhFFhfALfPbPb
EAhfLAhgchpLpjhFgEpJFLOLfED AhpbLpjOLAfLLbEPgLOEjfLFhfgPpcChDPAEAEhhAPDL
jHLbLgEpOEjjLbEOOfLbbPbbyLbjPjHPpjHLjEfCLjLOECLpAPLbjHLjEEDbhEAjEbCyPOEpALFhfchDPA
ECLpAPLbjhLgyyDEjLjhRLAhpbPbjLpjPjHchDPALRLbjefHEpjpPALbbyfLjLfjjHLAhpbjPjyjPhpEED
fPCHjbhFjHLchcyDEALEfLfLcfhjLAjLO

8pjHL2DRywyLfwyLAhpbLpjOLAfLLjHL5n6bcLAPFPAEDDJgEpOEjNROJsHall ensure that
force investigations are conducted fairly and with the goal of determining whether force is used
consistently with APD policJ[57] and that all serious uses of force be investigated and reviewed by
supervisors trained in constitutional standards and policy compliance. Further, the decree
gEpOEjjLOjHEjjHLfLgPbAhpAhpOyAjPbEhypOOPbAPcDPLbHEDDRLFEEPfEpO AhpbPbjLpjEpOObHEDDRL

---

[55] Demetria Brooks et al., *Plaintiff's Second Amended Complaint, Demetr*
*and Independent Administrator of the Estate of Roderick Brooks v. Harris County, et al.*, United States District
Court for the Southern District of Texas, Case No. 4:22-cv-03322, filed March 14, 2025.
[56] Demetria Brooks et al., *Plaintiff's Second Amended Complaint, Demetr*
*and Independent Administrator of the Estate of Roderick Brooks v. Harris County, et al.*, United States District
Court for the Southern District of Texas, Case No. 4:22-cv-03322, filed March 14, 2025.
[57] United States Department of Justice and City of Albuquerque, *Settlement Agreement Between the United States*
*and the City of Albuquerque*, United States District Court for the District of New Mexico, November 10, 2014.

hall ensure that discipline is consistently applied, and jHEjgPjPCEjPpChfECCfEvEjPpCFEAjhfbEfLcfhcLfDJOhAygF$pjLO⬜

Appropriate accountability and oversight related to police use of force is generally demonstrated in the form of administrative leave or duty restriction during the investigation and review of force EccDPAEjPhpbjHEjfLbyDjPpbPCpPFPAEpjPpYyfJhfOLEjHbyAHEbaCjSEfOPpb032Dverpass Tasing incident.  When acute incidents or patterns of inappropriate, unreasonable, or excessive force applications are identified, appropriate remedial corrective actions include, training, discipline, re-assignment, and possibly termination.  The intent of these measures is to protect the cyRDPAEpOycHhDOchDPAPpCbHPCHLbjgPbbPhpjhcfhjLAjDPFLEpOAhpOyAjchDPALhRYLAjPvLbiPjH infringing on the rights of the populace.  The failure of agencies to uphold this critical mission related to police use of force investigation, review, and intervention, reasonably leads to a predictable likelihood that an officer who has engaged in a pattern and practice of unsound tactical decision making, unreasonable and excessive use of force applications, will continue in these unconstitutional patterns of conduct.

8pjHPbgEjjLfjHLFEPDyfLhFjHLSEffPb4hypjJaHLfPFFbhFFPALjhEccDJjHLbLCLpLfEDDJEAALcjLO⬜ police principles and practices to conduct robust use of force investigations and hold Sgt. Hardin, or any other officer, accountable is therefore contrary to generally accepted police practices.

### S t a t e m e n t   o f   C o m p e n s a t i o n

My fee for analysis in this case is $285.00 per hour, billed in 0.25-hour increments, in addition to reimbursement for expenses.  On days when I am expected to testify, I bill at a minimum rate of eight (8) hours.

### S u b m i s s i o n

The preceding reflects my opinions, regarding the officer-involved shooting incident involving SEffPb4hypjJaHLfPFFbhFFPALaCjUEffLjjSEfOPpbpMr. Roderick Brooks. This report is based on the materials provided and reviewed to date. Should any subsequent information cause me to expand, add, or revise any of my opinions, I reserve the right to revise, amend, or supplement my opinions accordingly. With regards to these stipulations, I declare under penalty of perjury that the foregoing is true and correct.

Respectfully,

*Nick Bloomfield*

Nicholas G. Bloomfield
5LALgRLf⬜⬜jH⬜   ⬜⬜

---

[58] United States Department of Justice and City of Albuquerque, *Settlement Agreement Between the United States and the City of Albuquerque*, United States District Court for the District of New Mexico, November 10, 2014.